Bolívar Pagán, peticionario, v. Horace M. Towner, en su çarácter de Gobernador de Puerto Rico, demandado.

No. 236.—*Visto:* Noviembre 16, 1925. *Resuelto:* Febrero 3, 1926.

1. Mandamus—Materias y Propósitos del Remedio—Actos y Procedimientos de Funcionarios Públicos, Juntas y Municipios—Nombramiento de Funcionarios Públicos—Discreción en Cuanto a Nombrar.—Para poder librar un auto de *mandamus* es necesario que la persona contra quien se dirija tenga un deber ministerial, impuesto por la ley, de ejecutar el acto cuyo cumplimiento se le exige, pues si no es así y tiene discreción para o en la manera de ejecutarlo, no debe librarse el auto (*Zavala* v. *Consejo Ejecutivo,* 9: 211; *Negrón* v. *Supt. Elecciones,* 11: 366).

2. Elecciones—Distritos o Precintos Electorales y Funcionarios Electorales—Nombramiento, Condiciones y Término del Cargo—Representantes de los Partidos Políticos—Miembros Junta Insular de Elecciones.—La facultad conferida al Gobernador por la sección 1 de la Ley de Inscripciones y Elecciones de nombrar representantes de los dos partidos políticos principales a la Junta Insular de Elecciones a propuesta de los organismos directivos centrales de dichos partidos envuelve en sí la discreción de nombrar o nó a la persona propuesta.

Solicitud de Mandamus (jurisdicción original) para que el Gobernador proceda a nombrar al peticionario como miembro de la Junta Insular de Elecciones. *Denegada.*

*Bolívar Pagán,* abogado del peticionario; *Hon. George C. Butte,* Attorney General, y *C. Llauger Díaz,* abogados del demandado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

El peticionario nos pide que libremos un auto de *mandamus* ordenando al Gobernador de esta Isla que lo nombre miembro de la Junta Insular de Elecciones y con tal fin alega substancialmente lo siguiente: que es mayor de veintiún años, ciudadano de Puerto Rico y vecino de esta ciudad: que la Junta Insular de Elecciones es permanente

1

y está compuesta por tres miembros nombrados por el Gobernador de esta Isla, dos de ellos a propuesta de los organismos directivos centrales de los dos partidos políticos principales de la Isla: que el número de votos obtenido en las últimas elecciones generales de noviembre de 1924 por el Partido Socialista para su candidato a Comisionado en los Estados Unidos lo ha convertido en uno de los dos partidos políticos principales, dejando de tener ese carácter el Partido Republicano Puertorriqueño, por cuyo motivo el puesto que el representante de este partido ocupaba en la Junta Insular de Elecciones está vacante: que después del resultado de las elecciones el organismo directivo central del Partido Socialista propuso al Gobernador al peticionario para que lo nombrase miembro de la Junta Insular de Elecciones en representación de dicho partido y que el Gobernador se ha negado a nombrarlo para dicho cargo, sin que ninguna de las razones expuestas para su negativa se refieran a objeción alguna contra el candidato propuesto ni contra sus condiciones legales, intelectuales, morales ni físicas.

Sin librar el auto solicitado convocamos a las partes para ser oídas sobre la procedencia o improcedencia de la solicitud, habiendo alegado el demandado en esa comparecencia que la solicitud no aduce hechos suficientes para conceder el remedio solicitado, y concedimos a las partes tiempo para presentar alegatos escritos sobre esa cuestión. Por consiguiente, en vista de la excepción previa alegada por el demandado la cuestión a resolver es si tomando como ciertos los hechos alegados por el peticionario ellos son suficientes para que ordenemos al Gobernador que lo nombre para dicho cargo.

[1, 2] Para que pueda librarse un auto de mandamus es necesario que la persona contra quien se dirija tenga un deber ministerial impuesto por la ley de ejecutar el acto cuyo cumplimiento se le exige, pues si no es así y tiene algunas discreción para ejecutar el acto o en la manera de ejecutarlo,

entonces no debe librarse el auto de *mandamus,* según hemos declarado en los casos de *Zavala* v. *Consejo Ejecutivo,* 9 D.P.R. 211, y de *Negrón* v. *Superintendente de Elecciones,* 11 D.P.R. 366. Por esto es conveniente dejar establecido, como se dice en 18 Ruling Case Law, p. 116, y en 38 Corpus Juris, p. 598, que frecuente y universalmente se ha reconocido que el *mandamus* sólo es procedente para hacer cumplir un deber o un acto ministerial: que en este sentido un deber ministerial puede ser definido brevemente como un deber impuesto por la ley que no permite discreción en su ejercicio sino que es mandatorio e imperativo: que la distinción entre actos meramente ministeriales y judiciales y otros actos oficiales es que cuando la ley prescribe y define el deber que debe ser cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio, el acto es ministerial; pero cuando el acto que debe ser cumplido envuelve el ejercicio de discreción o juicio, no es considerado meramente ministerial. También queremos decir que para que pueda librarse un auto de *mandamus* es necesario que exista un claro derecho legal a compeler la ejecución del acto o deber que se reclama, 38 Corpus Juris 582, pues aunque se libre un auto condicional ha de disponer que el demandado ejecute el acto que se le ordena a menos que demuestre razones suficientes para no ejecutarlo. Por esto el derecho reclamado debe ser claro pues el libramiento del auto significa que el tribunal entiende que el peticionario tiene el derecho que reclama y que el demandado tiene el deber ministerial de realizar el acto que se le ordena, si no demuestra razones suficientes para dejar de ejecutar lo que se le manda.

Sentado lo que precede examinaremos si los hechos de la petición en este caso son suficientes para decidir que debe librarse el auto de *mandamus* pedido.

La ley dispone la existencia de una Junta Insular de Elecciones permanente compuesta de tres miembros, dos de los cuales serán representantes de los dos partidos políticos prin-

cipales de la isla y cuyos nombramientos deberán ser hechos por el Gobernador a propuesta de los organismos directivos centrales de los respectivos partidos políticos principales, por lo que la cuestión principal envuelta en este caso es si siendo el Partido Socialista uno de los dos partidos políticos principales después de las últimas elecciones, como alega la petición, y si habiendo propuesto dicho partido al peticionario para representarlo en dicha junta, el Gobernador tiene el deber ministerial de nombrar al único candidato que le ha sido propuesto o si ese deber es discrecional.

Aunque el peticionario sostiene que por haber sido propuesto por el Partido Socialista el Gobernador tiene el deber ministerial de nombrarlo, sin embargo, no parece estar seguro de su afirmación pues al alegar que ninguna de las razones expuestas por el Gobernador para no hacer su nombramiento se refieren a sus condiciones legales, físicas, morales ni intelectuales, admite tácitamente que si existiera alguna de esas razones no estaría obligado a nombrarlo. Y así es en efecto, pues la única limitación impuesta por la ley al Gobernador es que la persona que nombre debe ser propuesta por el partido correspondiente y no podemos creer que la intención de la legislatura fué que el Gobernador tuviera que autorizar con su firma el nombramiento de cualquier persona que se le proponga para formar parte del organismo oficial Junta Insular de Elecciones, cualesquiera que sean las condiciones legales, morales, físicas, intelectuales o de cualquiera otra índole de la persona propuesta. Y de la alegación dicha puede deducirse también que el Gobernador tiene para no hacer el nombramiento alguna objeción distinta de las expuestas en la petición que no se ha mencionado en ella y que tal vez sea suficiente para su negativa.

Al reconocer la ley a los dos partidos políticos principales el derecho de tener un representante en la Junta Insular de Elecciones nombrado por el Gobernador ha facultado a esos partidos para proponer esa persona pero no para nombrarla, y de sostenerse la teoría del peticionario no se-

ría el Gobernador quien hiciera el nombramiento sino los
partidos políticos y el Gobernador quedaría convertido en
un autómata cuya única misión en este caso sería poner su
firma ineludiblemente al nombramiento de la persona pro-
puesta por los partidos políticos.   Cuando la ley ha querido
conferir a los partidos políticos el derecho de nombrar a
sus representantes para funcionarios oficiales lo ha decla-
rado expresamente, como lo hizo al disponer que cada uno
de los dos partidos principales nombrase una persona de las
tres que han de formar la Junta Local de Elecciones en cada
municipio.   Sección 13 de la Ley No. 79 de 1919, que fué en-
mendada en 1923 (p. 563) y 1924, (p. 5.)

Para la Junta Insular de Elecciones la ley no ha confe-
rido a los dos partidos políticos principales el derecho de
nombrar la persona que ha de representarlos en ella sino el
de proponer la persona al Gobernador para su nombra-
miento; y proponer, de donde se deriva la palabra propuesta,
es según el Diccionario de la Academia Española, "mani-
festar con razones una cosa para conocimiento de uno o
para inducirle a adoptarla".   "Consultar o presentar a uno
para un empleo o beneficio."   La frase "a propuesta" usada
en el texto castellano de la ley se consigna en la edición in-
glesa de ella con la de "*on recommendation,*" que es aún más
explícita y clara en su significado, por lo que los partidos po-
líticos tienen sólo el derecho de proponer, de recomendar
sus candidatos, derecho que recíprocamente confiere al Go-
bernador el de no aceptar la propuesta o recomendación y
por tanto el de no ser compelido a aceptar y nombrar nece-
sariamente a la persona propuesta y de solicitar que los or-
ganismos directivos centrales de los partidos le propongan
otra persona que a su juicio pueda ser nombrada por él.   La
facultad de nombrar a propuesta o por recomendación de
otro envuelve en sí la discreción de nombrar o nó a la per-
sona propuesta o recomendada.   Claro está que esa facultad,
que se reconoce al Gobernador en este caso, es para ser ejer-
citada dentro de límites razonables, y que si de ella se

abusara procedería el auto de *mandamus*.  Por ejemplo, el Gobernador, según hemos dicho, no podría nombrar a persona alguna que no fuera propuesta por el partido y tendrá que escoger un nombre de entre los propuestos si no existen razones válidas para rechazarlos a todos.  De la solicitud presentada no se desprende abuso alguno de discreción por parte del Gobernador al dejar de nombrar al peticionario.

Las otras razones de oposición del demandado a la petición son secundarias a la que hemos considerado y por eso no las tratamos.

En el caso de *Piovanetti* v. *Paz y otros*, 28 D. P. R. 537, citado con aprobación en el de *Torres* v. *Asamblea Municipal de Guánica,* 33 D. P. R. 349, resolvimos que según la ley entonces vigente las asambleas municipales estaban obligadas a cubrir las vacantes que ocurrían en su seno con la persona que le propusiera el organismo directivo local del partido que eligió el miembro cuya vacante haya de cubrirse, sin poder pedir que se propusiera más de una persona y sin tener el derecho de elección: pero esa decisión no es aplicable al caso presente porque, como entonces dijimos, no podía quedar a merced del partido contrario en la asamblea municipal la elección de la persona que había de representar en ella al otro partido de la minoría, mientras que en el caso presente no es el partido contrario el que con sus ideas e intereses opuestos al otro ha de hacer el nombramiento sino el Gobernador de la isla en quien no podemos suponer tales intereses.

Por las razones expuestas la solicitud de *mandamus* debe ser negada.

El Juez Asociado Sr. Franco Soto disintió.

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO
SR. FRANCO SOTO

No puedo concurrir con la mayoría que rehusa expedir un auto alternativo de *mandamus* y así evita discutir los méritos del caso.  La petición la considero suficiente, a me-

nos que en ningún caso no fuera permitido expedir un *mandamus* contra el Gobernador. Esto fué decidido afirmativamente en los casos de *Lutz* v. *Post*, 14 D. P. R. 860, y *Jiménez* v. *Reily*, 30 D. P. R. 626. De igual modo no había que prestarse atención al derecho que reclama el peticionario si la legislatura no tuvo ningún propósito al poner en vigor la sección de la ley electoral cuyo cumplimiento se solicita dejando su ejecución como acto personal o voluntario del demandado. Si hubiera ocurrido así, ¿para qué decretar leyes de tal naturaleza?

La sección a que nos referimos es la sección 1ª de la "Ley de inscripciones y elecciones," tal como fué enmendada en junio 18, 1924, que en lo pertinente dice lo siguiente:

"Se establece una junta permanente de elecciones que se compondrá de un Superintendente General de Elecciones, como presidente, quien será designado por el Gobernador, con el consejo y consentimiento del Senado de Puerto Rico, y de dos personas representando los dos partidos políticos principales de la Isla según más adelante se definen en la presente, y de un substituto de cada uno de dichos miembros, que serán nombrados por el Gobernador a propuesta de los organismos directivos centrales de dichos partidos;" * * *.

No se pone en duda por la mayoría, seguramente, por ser cuestión de conocimiento judicial, que por el resultado de las últimas elecciones celebradas en noviembre 4, 1924, el Partido Socialista se tornó en uno de los dos partidos políticos principales de la Isla. Y el peticionario descansando en ese hecho fundamental alega que por haber perdido el Partido Republicano Puertorriqueño el carácter de partido político principal y mediante "la propuesta" del Gobernador de su nombre por el organismo director del Partido Socialista, él tiene derecho a ocupar la vacante que dejó el representante de aquel partido en el seno de la Junta Insular de Elecciones, y que a pesar de tal propuesta dicho funcionario se ha negado a hacer el nombramiento, expresándose el peticionario en ese particular, de este modo:

"XII. Que el referido demandado, Horace M. Towner, actuando

en su carácter de Gobernador de Puerto Rico, se ha negado a nombrar a dicho peticionario como miembro de la Junta Insular de Elecciones en representación del Partido Socialista de Puerto Rico como uno de los dos legalmente llamados partidos políticos principales en la Isla de Puerto Rico;

"XIII. Que ninguna de las razones expuestas por dicho demandado por negarse a nombrar al peticionario como arriba se indica, se refiere a objeción alguna contra el candidato propuesto, ni a objeción alguna contra las condiciones legales, intelectuales, morales ni físicas del referido peticionario;"

En mi concepto la negativa en la forma expresada hace más que suficiente la petición porque ella por sí sola era bastante, si es que para nosotros la jurisprudencia tiene algún valor, no siendo necesario para el peticionario anticiparse a dar las únicas razones en que podía fundarse la negativa del demandado. La regla general que uniformemente se ha sostenido de ser indispensable, antes de interponer un *mandamus*, que se haga un requerimiento al demandado y que una negativa expresa o implícita debe existir, no tiene aplicación cuando el deber que se trata de enforzar es de naturaleza pública (*public nature*) o afecta al pueblo en general, y una demanda y su negativa en tales casos no hay que alegarlas. La ley que exige el deber subsiste como requerimiento continuo. *People* v. *Board of Sup'rs.*, 79 N. E. 126. Y no se puede decir que esta doctrina sea una novedad en nuestra jurisprudencia local. En el caso de *Torres* v. *Asamblea Municipal de Guánica*, 33 D. P. R. 354, donde precisamente se trató de un *mandamus* que perentoriamente ordenó a dicha asamblea el nombramiento de un miembro socialista "a propuesta" del organismo directivo del Partido Socialista, se expresó esta Corte Suprema en estos términos:

"Como tendería a demostrar nuestra discusión de la cuestión principal, la selección de una persona para representar a determinado distrito electoral es un asunto de alto carácter público. Por tanto, estamos satisfechos en vista de las citas del peticionario, de que en

cuestiones de tan alta naturaleza pública un previo requerimiento para que se cumpla el acto en cuestión no es necesario.''

Si esto es así, creemos demasiado pedir que alegándose en este caso que hubo la demanda y la negativa del demandado, se exija además que se expresen las razones que tal vez habría que desentrañar del fuero interno del demandado. Cosa imposible.

Y parecerá extraño, por consiguiente, que se haga depender por este tribunal el cumplimiento de la sección que se interpreta de ciertas reservas que ponen en la mente del demandado, y que por ser imaginario su efecto podía ser el mismo se trate de uno o cien candidatos. Con sólo negarse el demandado era bastante si se le reconoce que su poder es arbitrario. También esto resulta en pugna con el consensus unánime de las autoridades. La doctrina general establecida de cuando la ejecución de un deber oficial envuelve el ejercicio de un juicio o discreción el oficial no puede ser compelido en relación con la actuación particular que él pueda tomar, tiene sus límites. La jurisprudencia sienta la excepción para todos aquellos casos en que el oficial o funcionario puede ser culpable de un ''gross'' abuso de discreción o exista una evasión positiva del deber o rehuse actuar enteramente con menosprecio a la ley, pues en estas circunstancias el *mandamus* es el medio que puede proporcionar el remedio no existiendo otro adecuado prescrito en la ley. 18 R. C. L. 126-7 y casos citados en la nota 5ª.

La discreción, de todos modos, tiene su límite y no sabemos sin ver los hechos si se ha ido más allá de lo que prescribe tal facultad, cuando el peticionario alega, si es necesario alegarlo, que ninguna razón para sostener la actuación del Gobernador se refiere a objeción alguna contra las condiciones legales, morales o físicas del peticionario. No podemos escudarnos, so pena de incurrir en la misma falta, en el exceso de discreción que se trata de corregir, en darle una significación a la palabra ''propuesta'' que no fué el fin

o la intención que tuvo el legislador. La interpretación racional única que cabe es que la legislatura expresó su pensamiento de que la persona ''propuesta,'' que tanto equivale a decir la persona elegida o seleccionada por el partido político a quien corresponda, no será nombrada fuera de la actuación oficial de los partidos políticos dominantes sino por su conducto oficial. En una palabra, se quiso sentar que el demandado no podía obrar por su propia iniciativa, escogiendo cualquiera individualidad, sin la proposición oficial del partido político a quien correspondiera la representación en la Junta Insular de Elecciones. Se quiso definir imperativamente que el Gobernador no actuaría fuera de los actos oficiales de dichos partidos y esa fué la intención inequívoca del legislador por la significación misma que debió tener para ellos la composición de un organismo cuya alta misión preservativa de toda democracia, es la inspección y dirección de elecciones en Puerto Rico. De ahí es que a poco que se examinen las autoridades podemos ver que se han decretado leyes de naturaleza análoga en otros estados respondiendo indudablemente a la base fundamental de un gobierno republicano o democrático. La teoría parece bien clara. Los partidos políticos son las verdaderas agencias del pueblo que es donde reside la soberanía y el gobierno es a su vez un mandatario como resultado de las luchas en los comicios para dirigir la cosa pública. Si esto es así, ¿cómo es posible mantener elecciones justas e imparciales si a uno o cualquiera de los partidos políticos dominantes no se le reconoce la debida representación en aquellos organismos oficiales que tienen el control de las elecciones?

''La apelante se refiere al alegado poder para nombrar de la asamblea municipal. El poder de nombramiento de la asamblea municipal para cubrir vacantes es meramente último o subsidiario. La elección la tiene principalmente el pueblo y el nombramiento, sostenemos, se deja al partido que pierde un miembro en la asamblea. Por la Constitución de los Estados Unidos la facultad de nombramiento puede dejarse por el Congreso al Presidente o a los jefes de

departamentos y no dudamos que el Congreso tiene el derecho de fijar tal facultad de nombramiento en alguna otra parte. Quizás originalmente los partidos políticos no fueron reconocidos como entidades legales pero la historia en los Estados Unidos ha demostrado que los partidos políticos están reconocidos para varios fines como entidades legales, hasta el punto de que se imponen limitaciones a su organización. Somos claramente de opinión de que la Legislatura de Puerto Rico tenía el derecho de dejar que se cubra una vacante por el partido político, y así lo hizo.'' *Torres* v. *Guánica*, 33 D.P.R. 352.

No será, pues, una sorpresa decir que la jurisprudencia americana frecuentemente ha sostenido que el auto de *mandamus* es un remedio adecuado para obligar a funcionarios al cumplimiento del deber que tienen con respecto al nombramiento de los funcionarios directores de una elección. 18 R. C. L. 269-70. ''De conformidad con esto se ha resuelto que el deber impuesto a un funcionario público de nombrar funcionarios directores de una elección, que han de ser elegidos de los diferentes partidos políticos es tan ministerial, que puede expedirse un auto de *mandamus* para obligarle a nombrar un miembro de uno de los partidos, cuando él se ha negado arbitrariamente a designar cualquier miembro de tal partido pero ha nombrado personas, las cuales todas son miembros del partido contrario.'' 18 R. C. L. 269.

En el caso de *Independence League* v. *Edward Taylor*, 154 Cal. 179, la ley había creado una Junta de Comisionados de Elecciones para la dirección y gobierno del registro de votantes y celebración de elecciones en la ciudad y condado de San Francisco. En el alcalde residía la facultad de nombrar. Dos de los cinco miembros primeramente nombrados eran elegidos de cada uno de los partidos políticos que obtuvieran en la ciudad y condado mayor número de votos en la última elección general precedente. El alcalde violó el precepto nombrando a dos personas no afiliadas al partido peticionario que obtuvo el mayor número de votos, y la opinión de la Corte Suprema de California en sus conclusiones, dice lo siguiente:

"En vista de los hechos admitidos, como antes se han referido, no nos parece que existe ninguna duda de que fuera el deber imperativo del alcalde por virtud de esta prescripción de la carta constitutiva cubrir las vacantes, que ocurrieron en la comisión de elección en enero último nombrando miembros de la Liga de la Independencia. Los términos de la sección son tan claros y la norma del precepto tan evidente que sería superflua la discusión en cuanto a la significación de la primera o la importancia vital de la segunda. Las funciones de la junta con respecto a toda la serie de actos desde el registro de votantes hasta la emisión de sus votos son tan numerosas e importantes y la necesidad de constituir tal organismo, con tales poderes, representante de los dos partidos principales en un gobierno republicano o democrático está tan universalmente reconocida que no es necesaria argumentación alguna para robustecer la conclusión de que los autores de la carta, y el pueblo que la adoptó, intentaron privar al alcalde de cualquier discreción para desatender su claro mandato. La política de la ley es impedir los fraudes en elecciones, y no solamente garantizar la legalidad en su conducta sino dar al público la seguridad práctica de que ellas han sido celebradas honradamente y sus resultados declarados con honradez. El alcalde tiene, y necesariamente ha de tener, discreción en la selección de los individuos que han de ser nombrados, pero no tiene ninguna discreción para buscar aquellos individuos fuera de la clase de elegibles designada. Admitir que tiene tal discreción, y que dicha discreción no está sujeta a ningún control, es crear precisamente la condición que los autores de la carta quisieron impedir. Por los hechos presentados en la petición y excepción previa nuestra conclusión es que el alcalde infringió la carta al nombrar a King y Apperson y que él ha dejado y se ha negado a ejecutar un acto que especialmente tenía que hacerlo como deber resultante de su cargo al negarse a nombrar a dos miembros de la Liga Independencia para los puestos que quedaron vacantes en enero último.

"Parece que se ha argumentado que porque esos puestos están ahora ocupados por King y Apperson, la corte no puede ordenar al demandado a nombrar a otros para los mismos cargos. Este razonamiento también convierte el precepto de la carta en cuestión en una mera declaración académica de ética política y priva a los partidos políticos principales de cualquier remedio eficaz por la violación de los importantes derechos que quiso garantizar. Si su validez fuera admitida, el alcalde podría seleccionar los miembros de la comisión de un club con completa impunidad en tanto se trata de las cortes.''

En el caso de *State* v. *Board of President and Directors St. L. Pub. Schools*, 35 S. W. Rep. 617, también es uno muy interesante donde si bien se reconoce la regla general que el *mandamus* no procede cuando se está investido de cierta discreción para cumplir el deber que la ley define, se dice, sin embargo, que está bien establecido que si el poder discrecional se ejerce con manifiesta injusticia, las cortes no están impedidas de hacer cumplir tal deber y que un abuso de discreción es corregible por *mandamus*. Y así se consideró la acción de los demandados nombrando en un colegio electoral a jueces y secretarios todos de un solo partido, expulsándose en definitiva a estos oficiales y nombrándose a otros con igual representación por cada partido. Finalmente la Corte Suprema de Missouri se expresó así:

"Sin más discusión nuestra conclusión es que en la acción ejercitada la junta escolar abusó de tal modo de la discreción conferídale que era una negativa virtual en cumplir el deber de celebrar una elección imparcial y que, para la ley, se ha negado a actuar en absoluto, y es nuestro deber pasar por alto su actuación injusta, y requerirla por nuestra orden a que proceda en forma legal a celebrar dicha elección." p. 621.

Siguen la misma línea los casos de *Illinois State Board of Dental Examiners* v. *People*, 13 N. E. 201, 123 Ill. 227; *Village of Glencoe* v. *People*, 78 Ill. 382; *Arberry* v. *Beavers*, 6 Tex. Loc. Cit. 472; *Commissioners* v. *Lynch*, 2 McCord, 170; *The Supreme Court of New .York* v. *Superior Court*, 5 Wend. 114, y *Fretwell* v. *Laffoon*, 77 Mo. 26, que aparecen citados en el mismo caso de *State* v. *Board of President & Directors St. L. Pub. Schools, supra,* sosteniéndose abundante y suficientemente que la discreción tiene su límite, especialmente si el derecho violado pertenece al público. P. 620.

Si no perdemos de vista estos casos y se les concede algún valor, hay que decir francamente que el criterio de la mayoría es enteramente equivocado. La alegación del peticionario, siendo necesaria, lo que negamos, en sentido de que el Gobernador se ha negado a hacer el nombramiento

sin aducir razón alguna de carácter legal, físico, moral o intelectual, indica, como es natural, el límite o círculo en que puede girar la discreción del Gobernador para hacer el nombramiento. Es en este punto solamente que sería irrazonable pensar que el poder de nombrar fuera mecánico o autómata. Y no puede entenderse cómo podamos deducir de una alegación que expresa la negativa rotunda del demandado que ella "presupone que el gobernador tiene alguna objeción distinta de las expuestas en la petición que no se exponen en ella." Si fuera así es propiamente el demandado quien podrá decirnos lo que supone el tribunal. De otro modo sería una manera irregular de asumir una defensa que no conocemos y sin investigar el alcance de la misma, en caso de ser arbitraria, límite de la discreción, a menos que la Legislatura diera al Gobernador el poder sin restricciones de hacer el nombramiento y las cortes quedaran impotentes para corregir o revisar su acción, cualquiera que fuere. Pero esto conduce al absurdo. Cuando la legislatura confirió el poder de nombrar en la forma prevista en este caso se debía interpretar necesariamente que no era para ejercerlo arbitraria o injustamente sino en pro de los mejores intereses del pueblo. No importa que sea uno el propuesto. Si la actitud del demandado es una simple negativa, lo mismo podía ocurrir con la propuesta de un mayor número y así cualquier funcionario manteniendo una situación de pasividad podía fácilmente desconocer la ley.

Por otra parte, el caso que nos ha parecido más importante, citado por el Attorney General, es el de *Jones* v. *Sargent et al.,* 124 N. W. 339, de la Corte Suprema de Iowa. En ese caso, que fué un procedimiento de *quo warranto,* la discusión fuerte y acalorada que sostuvieron los jueces, pues la decisión se dió por mayoría, se dirigió principalmente a la constitucionalidad de la ley, porque ésta imponía a los candidatos, aparte de su afiliación política, determinadas especificaciones para formar parte de la comisión de policía. Las especificaciones se referían a que el candidato debería

ser ciudadano del Estado de Iowa y haber residido en la
ciudad de Council Bluffs por más de cinco años precedentes
a su nombramiento. La Corte Suprema parece, sin em-
bargo, confirmar el principio general que hemos sostenido,
pues en uno de sus párrafos se expresa así: "Si no hubiera
especificaciones respecto al deber de elegir dos de la mayo-
ría y uno de la minoría, podríamos tener una situación di-
ferente. Pero hay ciertas especificaciones y el alcalde tiene
discreción acerca de este mismo asunto."

Por último diremos que el caso de *Piovanetti et al.* v.
*Paz et al.*, 28 D. P. R. 537, responde en cuando al resultado
a la teoría general de los casos americanos. Ocurrió una
vacante de un miembro de la minoría en la Asamblea Muni-
cipal de Yauco, y habiendo propuesto un único candidato el
organismo político director, a quien correspondía hacer la
recomendación por disposición de la ley, la asamblea no hizo
el nombramiento pero acordó pedir una terna al mismo or-
ganismo político para cubrir la vacante. No conforme la
minoría con dicho acuerdo, se estableció un *mandamus* para
compeler a la mayoría que componía la asamblea nombrar
el candidato propuesto. La Legislatura usa en la sección 22
de la "Ley Municipal," aprobada en julio 31, 1919, la misma
terminología, "a propuesta del organismo director". * * *
etc., y sin embargo el lenguaje de esta Corte Suprema, con-
firmando la sentencia inferior que decretó perentoriamente el
*mandamus,* es el siguiente:

"Basta este enunciado para comprender que no tienen razón los
apelantes, pues la Ley Municipal no los autoriza para exigir que el
partido de la minoría le proponga varias personas para cubrir la va-
cante que dejó uno de sus afiliados, sino que dice que la vacante se
cubrirá a propuesta del organismo director del partido que eligió
el miembro cuya vacante haya de cubrirse. A este partido es a quien
se concede el derecho de proponer el candidato y por tanto el de es-
coger el que crea más conveniente; y tiene que ser así porque no
puede quedar a merced del partido contrario en la asamblea muni-
cipal la elección de la persona que ha de representar en ella al par-

tido de la minoría, siendo éste el resultado si tuviera el derecho de pedir que se le proponga más de una persona.''

No creemos que pueda ponerse ningún paliativo a este lenguaje para quitar sus efectos en relación al caso presente. En mi concepto se va tan lejos que había que concluir que los miembros de toda asamblea eran meras figuras decorativas (*figurehead*) que solamente tenían que obedecer. Era innecesario que la Legislatura las hubiera mencionado en la ley porque su función se reducía a cero. Sin embargo, este caso se cita luego en el de *Torres* v. *Guánica, supra,* pero ya en este último se entra en un orden de ideas que subsana la impresión radical que dejaba el caso de *Piovanetti.* Por eso en el caso de *Torres,* p. 351, se dice: ''Cuando se hace una simple recomendación si el caso de *Piovanetti* v. *Paz* es correcto y reune condiciones el propuesto miembro, surge el deber en la asamblea de nombrar la persona recomendada.'' Y se dice además en la página 353: ''Un deber ministerial legal puede existir aunque la persona a quien se trate de obligar mediante *mandamus* tenga que interpretar una ley o examinar a un propuesto miembro para ver si reune las condiciones necesarias.''

El caso de Torres sigue sustancialmente la doctrina de los casos de *People* v. *Board of Sup'rs, supra,* y *People ex rel. Alpuier et al.* v. *Board of Sup'rs of Kaukakee County.*

''La selección'' de candidatos por el organismo político director de que hablan esos casos y que deben imperativamente ser nombrados por el organismo o funcionario que tiene la facultad de nombrar, tiene el mismo alcance, en mi concepto, que la frase ''la propuesta'' que usa nuestra ley.

¿Por qué, pues, no seguir sosteniendo principios que hasta ahora parecían invariables? La condición del demandado no importa. Debió expedirse un *mandamus* alternativo y luego de conocer los hechos, decidir de acuerdo con los méritos del caso.