

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, por sí y en representación de sus socios Maestros de Educación Física<br><br>      Demandantes-Peticionarios<br><br>                    v.<br><br>Hon. César Rey Hernández, PH.D. en su Carácter oficial como Secretario del Departamento de Educación; Estado Libre Asociado de Puerto Rico<br><br>      Demandados Peticionarios | <br><br><br><br>      Certiorari<br><br>      2010 TSPR 19<br><br>      178 DPR ____ |

Número del Caso: CC-2007-21


Fecha: 16 de febrero de 2010


Tribunal de Apelaciones:

                Región Judicial de San Juan

Juez Ponente:
                Hon. Heriberto Sepúlveda Santiago


Abogados de la Parte Peticionaria:

                 Lcdo. Rafael A. Nadal Arcelay
                Lcda. Vanessa Caraballo Santiago

Oficina del Procurador General:

                Lcda. Zaira Z. Girón Anadón
                Procuradora General Auxiliar

Materia: Mandamus


Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione   s del proceso de compilación y publicación oficial de las decisio   nes del Tribunal. Su distribución electrónica se hace como    un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros de
Puerto Rico, por sí y en
representación de sus socios
Maestros de Educación Física

  Demandantes-Peticionarios

           v.                          CC-2005-0777

Hon. César Rey Hernández,
PH.D. en su carácter oficial
como Secretario del Departamento
de Educación; Estado Libre
Asociado de Puerto Rico

  Demandados-Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff
Caraballo


San Juan, Puerto Rico, a 16 de febrero de 2010.

Nos corresponde resolver si, conforme a la Ley Orgánica del Departamento de Educación de Puerto Rico y en el contexto de los requisitos de una solicitud de *mandamus*, el Secretario de Educación tiene el deber ministerial de proveer en cada escuela pública un (1) maestro de educación física, y otro adicional por cada doscientos cincuenta (250) estudiantes o fracción, con que cuente la matrícula de esa escuela.

                              I

La Ley Núm. 68 de 28 de agosto de 1990, según enmendada, conocida como la Ley Orgánica del Departamento de Educación del Estado Libre Asociado de Puerto Rico, hizo compulsoria, por

primera vez en la Isla, la enseñanza del curso de educación física en todos los grados de nuestro Sistema de Educación Pública (Sistema). Sin embargo, con la aprobación de la Ley Núm. 149 del 15 de julio de 1999,[1] conocida como Ley Orgánica del Departamento de Educación de Puerto Rico, se eliminó el requisito de proveer educación física a los estudiantes de las escuelas públicas. Un año después, mediante la Ley Núm. 146 del 10 de agosto de 2000, se enmendó la Ley Núm. 149, *supra*, para incorporar nuevamente la educación física **como materia básica y obligatoria dentro del Sistema**.

Con la enmienda del 10 de agosto de 2000, se dispuso que cada escuela proporcionara a sus estudiantes un mínimo de tres (3) horas semanales de educación física. Además, se estableció que se garantizaría un maestro de educación física a cada escuela y que en aquellas escuelas con más de doscientos cincuenta (250) estudiantes, se nombrarían maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción.

Pasado tres años desde que se aprobó la anterior enmienda, la parte peticionaria, Asociación de Maestros (Asociación), entendió que el Departamento de Educación (Departamento) no había cumplido con lo dispuesto en la Ley mediante la referida enmienda. Por ello presentó ante el

---

[1] 3 L.P.R.A. 143a *et seq.*

Tribunal de Primera Instancia un recurso de *mandamus*,[2] mediante el cual planteó que era un deber ministerial del Secretario de Educación proveerle a todos los estudiantes del Sistema el mínimo de tres horas semanales de educación física, así como el maestro para esa materia y uno adicional por cada doscientos cincuenta (250) estudiantes o fracción, como expresa taxativamente la ley.

Así las cosas, la Asociación solicitó que, en vista de que se había incumplido con lo anterior, el Tribunal de Primera Instancia le ordenase al Departamento cumplir con el alegado deber ministerial reseñado. Por su parte, el Departamento presentó, entre otras cosas, una *"…Solicitud para que se deniegue el auto de Mandamus como cuestión de derecho"* en la que alegó que desde 2001, había estado cumpliendo con la obligación que le imponía la Ley de proveer al menos un maestro de educación física a cada escuela del sistema de educación pública. Además, argumentó que crear todas las plazas que se requerían para cumplir a cabalidad el mandato estatutario, en los cuatro años posteriores a la aprobación de la Ley, afectaría el cumplimiento de otras obligaciones del Departamento de Educación.

Luego de varios procedimientos, el Tribunal de Primera Instancia dictó una sentencia en la que expidió el

---

[2] El recurso fue presentado el 17 de noviembre de 2003.

recurso de *mandamus.*[3] En ésta, el foro primario determinó que el Departamento había cumplido con el mínimo requerido por la Ley, al nombrar al menos un maestro de educación física por escuela. Sin embargo, a su vez concluyó que el Departamento había incumplido con el requisito de proveer los maestros adicionales, de acuerdo al número de estudiantes matriculados en las escuelas. Por ello, ordenó que, **en cumplimiento con el deber ministerial impuesto por el Artículo 3.04 de la Ley Orgánica vigente**, el Departamento debía presentar un plan de nombramientos que tuviera como objetivo cumplir a cabalidad con el mandato de Ley, conforme a la capacidad de dicho Departamento.

Inconforme, el Departamento de Educación acudió ante el Tribunal de Apelaciones mediante recurso de apelación. Dicho foro apelativo intermedio dictó una sentencia mediante la cual revocó el dictamen del Tribunal de Primera Instancia.[4] En su sentencia, el Tribunal de Apelaciones concluyó que en este caso no procedía la expedición del *mandamus* por no encontrarnos ante un deber ministerial que obligara al Secretario de Educación al cumplimiento de lo dispuesto en la Ley Orgánica del Departamento, según enmendada en el año 2000. Indicó que no tenía duda de que, el reclamo que hacía la Asociación de Maestros en el caso estaba dentro de las funciones y deberes asignados al

---

[3] Sentencia emitida por el Juez Superior, Hon. Carlos S. Dávila Vélez, el 27 de septiembre de 2004.

[4] Sentencia dictada el 30 de junio de 2005, archivada en autos el 19 de julio de 2005.

Secretario, pero que ello no representaba necesariamente que éstas fuesen deberes ministeriales.

Así pues, el Tribunal de Apelaciones entendió que la determinación que hiciera el Secretario de Educación en cuanto a nombrar los maestros de educación física adicionales por cada doscientos cincuenta (250) estudiantes "conlleva[ba] un análisis de juicio, evaluativo [sic] y programático del presupuesto que le tocaba administrar. En otras palabras, que era una determinación que conlleva[ba] la discreción administrativa según la realidad presupuestaria del Departamento" de Educación, pues "[e]l Secretario de Educación esta[ba] limitado por la sabiduría de su propio juicio y por su noción de cuáles eran las prioridades presupuestarias."[5] El foro apelativo intermedio finalizó expresando que "[e]l deber de nombrar todas las plazas de educación física conforme lo establecía la Ley, era un deber discrecional y su omisión no era remediable mediante el recurso de *mandamus*".[6]

Inconforme, la Asociación de Maestros de Puerto Rico, acudió ante este Tribunal mediante una solicitud de *certiorari*[7] en la cual señaló únicamente la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE APELACIONES AL REVOCAR LA SENTENCIA EMITIDA POR EL TRIBUNAL DE PRIMERA INSTANCIA Y DETERMINAR QUE EL MANDATO ESTABLECIDO EN LA LEY 149, DE

---

[5] Véase Apéndice del Escrito de *certiorari*, pág.11.

[6] Íd.

[7] El recurso de *certiorari* fue presentado el 17 de agosto de 2005.

15 DE JULIO DE 1999 SOBRE LA OBLIGACIÓN DEL SECRETARIO DEL DEPARTAMENTO DE EDUCACIÓN DE NOMBRAR LOS MAESTROS DE EDUCACIÓN FÍSICA ES UN DEBER DISCRECIONAL.

Oportunamente, expedimos el auto solicitado. Con el beneficio de las comparecencias de las partes, procedemos a resolver el recurso.

## II

### A. El auto de mandamus

El auto de *mandamus,* es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones.[8] Éste, "aunque es un remedio en ley, participa de la índole de los de equidad".[9] Por consiguiente, algunos principios rectores de los recursos de equidad, como los que gobiernan el *injunction*, son aplicables al auto de *mandamus*.[10]

Este recurso sólo procede para exigir el cumplimiento de un deber impuesto por la ley, es decir de un deber calificado de "ministerial" y que, como tal, no admite discreción en su ejercicio, sino que es mandatorio e

---

[8] Art. 649 del Código de Enjuiciamiento Civil (1933), 32 L.P.R.A. sec. 3421.

[9] Rodríguez v. Corte, 53 D.P.R. 575, 577 (1938); véanse además, Maldonado v. Programa Emergencia de Guerra, 68 D.P.R. 976 (1948); Abella v. Tugwell, Gobernador, 68 D.P.R. 464 (1948); Nine v. Ortiz, 67 D.P.R. 940 (1947); Rexach & Piñero v. Sancho Bonet, Tes., 57 D.P.R. 337 (1940); D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Programa de Educación Legal Continuada de la Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1996, pág. 111.

[10] Rivé Rivera, op. cit., pág. 111.

imperativo.[11] El requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado.[12] Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida".[13]

De esta forma, si la ley prescribe y define el deber a ser cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio, el acto es uno ministerial.[14] No se trata de una mera directriz o de una disposición que requiere hacer algo, sin más. Debe tratarse de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado. *A contrario sensu*, cuando la ejecución del acto o la acción que se describe depende de la discreción o juicio del funcionario, tal deber es considerado como no ministerial.[15] Por consiguiente, al no ser ministeriales, los deberes discrecionales quedan fuera del ámbito del recurso de *mandamus*.[16]

---

[11] Espina v. Calderón, Juez, Sucn. Espina, Int., 75 D.P.R. 76, 84 (1953); Pueblo v. La Costa, Jr., Juez, 59 D.P.R. 179 (1941); Álvarez de Choudens v. Tribunal Superior, 103 D.P.R. 235, 242 (1974); Rodríguez Carlo v. García Ramírez, 35 D.P.R. 381, 384 (1926); Pagán v. Towner, 35 D.P.R. 1, 3 (1926); Véase además, Rivé Rivera, op. cit., pág. 107.

[12] Partido Popular v. Junta de Elecciones, 62 D.P.R. 745, 749 (1944).

[13] R. Hernández Colón, Derecho Procesal Civil, 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 477.

[14] Álvarez de Choudens v. Tribunal Superior, *supra*; Rodríguez Carlo v. García Ramírez, *supra*; Pagán v. Towner, *supra.*

[15] Íd.

[16] Partido Popular v. Junta de Elecciones, *supra.*

Por otro lado, hemos resuelto que este deber ministerial, aunque inmanente al auto de *mandamus,* no tiene que ser necesariamente expreso, pues tal supuesto reduciría la función exclusiva de este Tribunal de interpretar la Constitución y las leyes.[17] Si el deber surge o no claramente de las disposiciones aplicables es una cuestión sujeta a interpretación judicial que no depende de un juicio a priori fundado exclusivamente en la letra del estatuto.[18] Tal determinación tiene que surgir del examen y análisis de todos los elementos útiles a la función interpretativa; del examen paciente y riguroso que parte de la letra de la ley y de la evaluación de todos los elementos de juicio disponibles, para así descubrir el verdadero significado y propósito de la disposición legal.[19] Por tal razón, la determinación final dependerá de la interpretación que del estatuto orgánico de la agencia hagan los tribunales, sobre el grado de discreción conferido por la Asamblea Legislativa.

Además, el deber ministerial que exige el recurso de *mandamus* debe emanar de un empleo, cargo o función pública, por lo que el recurso procede contra todos los funcionarios del ejecutivo, desde el más alto hasta el

---

[17] Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 418 (1982)

[18] Íd.

[19] Íd.; Banco de Ponce v. Srio. Hacienda, 81 D.P.R. 442, 450 (1959).

último en la escala jerárquica.[20] Este recurso puede aplicarse, no sólo a funcionarios públicos, sino a cualquier agencia, junta o tribunal inferior de nuestro sistema judicial, siempre que éstos estén obligados a ejecutar un acto por mandato de ley.[21]

Por tal razón, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar el recurso.[22] Sin embargo, en cuestiones de interés público el reconocimiento de legitimación activa es sumamente liberal.[23] Así, reconocimos que "cuando la cuestión envuelta es de interés público y el mandamus tiene por objeto conseguir la ejecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como tal está interesado en la ejecución y protección del derecho público."[24]

---

[20] Art. 650 del Código de Enjuiciamiento Civil (1933), 32 L.P.R.A. sec. 3422; Lutz v. Post Gobernador de Puerto Rico, 14 D.P.R. 860, 869-870 (1908); Noriega v. Hernández Colón, 135 D.P.R. 406, 449 (1994).

[21] Art. 650 del Código de Enjuiciamiento Civil (1933), 32 L.P.R.A. sec. 3422; Véase además, Rivé Rivera, op. cit., pág. 117.

[22] Asoc. Pesc. Pta. Figueras v. Pto del Rey, Inc., 155 D.P.R. 906, 921 (2001).

[23] Fund. Arqueológica v. Dpto. de la Vivienda, 109 D.P.R. 387, 391 (1980); Cerame-Vivas v. Srio. De salud, 99 D.P.R. 45 (1970); Asociación de Maestros v. Pérez, Gobernador Int., 67 D.P.R. 848 (1947).

[24] Asociación de Maestros v. Pérez, Gobernador Int., supra, 851.

Por otro lado, es norma reiterada en nuestro acervo jurídico que "[c]uando la ley es clara [y] libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu."[25] Conforme a este principio rector de hermenéutica legal, al interpretar un estatuto, como cuestión de umbral, "debemos remitirnos al texto de la ley, **pues cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa**".[26] (Énfasis en el original.) Además, coexiste como claro principio de interpretación jurídica que al lenguaje de una ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla.[27]

De otra parte, la interpretación que de los estatutos conciban los tribunales, debe mantenerse siempre dentro de las prerrogativas judiciales. En el cumplimiento de esta función, resulta necesario que nuestra interpretación armonice, hasta donde sea posible, todas las disposiciones de ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa.[28]

Ahora bien, el auto de *mandamus,* como lo expresa la ley, es uno "altamente privilegiado". Esto significa que su

---

[25] Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256, 269 (1991).

[26] Romero Barceló v. E.L.A., 169 D.P.R. 460, 476-477 (2006); Ortiz López v. Municipio San Juan, 167 D.P.R. 609, 617 (2006).

[27] Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 784-785 (1968).

[28] Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005).

expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial.[29] Dicha expedición "[n]o procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos".[30]

El procedimiento para la expedición de un auto de *mandamus* está expuesto en la Regla 55 de las de Procedimiento Civil[31] y por nuestra jurisprudencia. Además, en términos procesales, hemos reconocido que debe existir un requerimiento previo por parte del peticionario hacia el demandado para que éste cumpla con el deber exigido, salvo algunas excepciones.[32] Así pues, como expresa el profesor David Rivé Rivera:

> …deb[e] alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; o 2) cuando el **deber** que se pretende exigir es uno de **carácter público**, a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario. (Escolios omitidos y énfasis suplido).[33]

---

[29] Ortiz v. Muñoz, Alcalde de Guayama, 19 D.P.R. 850 (1913).

[30] Hernández Colón, op. cit.

[31] 32 L.P.R.A. Ap. II R. 55.

[32] Véase, Noriega v. Hernández Colón, *supra,* págs. 448-449; Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1961); Medina v. Fernós, Comisionado, 64 D.P.R. 857 (1945); Urdaz v. Padín, Comisionado, 48 D.P.R. 306 (1935); Suárez v. Corte, 65 D.P.R. 850 (1946); Espina v. Calderón, Juez, Sucn. Espina, Int., *supra,* pág. 81; Martínez Nadal v. Saldaña, 33 D.P.R. 721 (1924).

[33] D. Rivé Rivera, op. cit., pág. 125; Véase además, Noriega v. Hernández Colón, *supra,* págs. 448-449; Medina v. Fernós,

Como puede observarse, cuando se utiliza el remedio de *mandamus* para obligar el cumplimiento de una función que redunda en el beneficio del público en general, y no se solicita en beneficio de una persona privada, "no es necesario hacer un requerimiento previo al funcionario encargado de ejecutar el acto".[34]

Además, y muy pertinente a las circunstancias del caso de autos, ya antes hemos resuelto que entre los factores a tomarse en consideración cuando se solicita de un tribunal la expedición de un auto de *mandamus* se encuentran: el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar envueltos; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros.[35]

En vista de lo anterior, la expedición de un auto de *mandamus* no debe ser producto de un ejercicio mecánico. Los tribunales deben realizar un balance entre los intereses en conflicto, sin obviar la utilidad social e individual de la decisión.[36] Como dijimos en <u>Díaz González v. Tribunal</u>

---

<u>Comisionado</u>, *supra*; <u>Urdaz v. Padín, Comisionado</u>, *supra*; <u>Suárez v. Corte</u>, *supra*; <u>Espina v. Calderón, Juez, Sucn. Espina, Int.</u>, *supra*; <u>Martínez Nadal v. Saldaña</u>, *supra*, pág. 736.

[34] Véase, Hernández Colón, <u>op. cit.</u>, pág. 478. Por tal razón, como veremos más adelante, en el caso de autos nos encontramos ante un deber de carácter público, que afecta no sólo a los maestros de educación física, sino también a los estudiantes del Sistema de Educación Pública de Puerto Rico, por lo que entendemos que el requerimiento previo era innecesario.

[35] Íd.; <u>Lutz v. Post Gobernador de Puerto Rico</u>, *supra,* pág. 878.

[36] <u>Dávila v. Superintendente de Elecciones</u>, *supra*, pág. 284.

Superior, 102 D.P.R. 195, 199 (1974), citando a Dávila v. Superintendente de Elecciones, 82 D.P.R. 264, 283 (1960):

> "En otras palabras, el remedio no se concede *ex debito justitiae* y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto."[37]

En fin, como hasta aquí hemos intimado, en la concesión del auto de *mandamus* deben considerarse no sólo los **requisitos** que imponen los estatutos orgánicos y nuestra jurisprudencia interpretativa al respecto, sino los **factores** que, sin intención de ser taxativos, se han mencionado. En ese contexto, ya antes hemos reconocido que el factor más importante al evaluarse la concesión de un auto de *mandamus* es el posible impacto que tal recurso pudiera ocasionar al interés público.[38] A estos efectos expresamos que, "[d]e ordinario, el posible impacto público que tendrá la expedición del *mandamus* será proporcional a la importancia del deber ministerial que se alega ha sido incumplido y que se pretende vindicar mediante el *mandamus*".[39] La "discreción" del auto y su relación con los

---

[37] Véase además, Maisonave v. Domenech, 45 D.P.R. 247, 251-252 (1933); Ortiz v. Muñoz, Alcalde de Guayama, *supra*, pág. 856 (1913); State v. Knop, 190 So. 135, 146-148 (La. 1939)

[38] Noriega v. Hernández Colón, *supra,* pág. 448.

[39] Báez Galib y otros v. C.E.E. II, 152 D.P.R. 352, 392 (2000).

remedios en equidad implica, entonces, que "el tribunal no está atado a un remedio fijo sino que se puede diseñar un remedio compatible con los intereses públicos envueltos."[40]

Por último, es indudable que la carga probatoria en la concesión o denegación de un auto de *mandamus* descansa sobre el peticionario.[41] Éste tiene la obligación de demostrar la existencia de un deber ministerial que no ha sido cumplido por el funcionario público contra quien se ha presentado el recurso. Una vez el tribunal entiende que el deber ministerial no ejecutado ha sido probado, aun así, el *mandamus* puede ser denegado. Tal acción puede fundamentarse, entre otros, por factores como son la existencia de un impacto negativo al interés público superior al impacto positivo, si alguno, que producirá la concesión del auto o por la imposibilidad de cumplir con dicho deber ministerial.

Por lo tanto, una vez la parte demandante ha probado la existencia de un deber ministerial y que éste no ha sido cumplido, le corresponde al funcionario sobre quien recae el deber ministerial la carga probatoria de demostrar que la concesión del auto afectaría negativamente un interés público mayor o que simplemente se le hace imposible

---

[40] Rivé Rivera, op. cit., pág. 112.

[41] Véanse, Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656,680 (1997) y P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), donde sostuvimos que en casos de recursos extraordinarios —específicamente en interdictos preliminares— la obligación de presentar evidencia recae sobre el peticionario; Véase además, la regla 10(B) de las de evidencia, 32 L.P.R.A. Ap. IV R.10(B).

cumplir.[42] Además, el funcionario, en su obligación de probar el detrimento al interés público que pudiera eximirlo de cumplir con el deber impuesto, no puede descansar meramente en sus alegaciones, sino que deberá presentar evidencia preponderante que coloque al tribunal en posición de constatar el impacto o perjuicio alegado. Sólo así, podrá colocar al foro primario en posición de decidir si deniega el recurso, conforme a la evidencia demostrativa de tal impacto perjudicial al interés público.

### B. Ley Orgánica del Departamento de Educación

Es altamente conocido que la educación ocupa un sitial prominente en nuestro país. Tan es así, que el derecho a la educación quedó plasmado en la sección 5 del Art. II de nuestra Constitución, la cual expresa que:

> Toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde

---

[42] State v. Knop, supra. Además, en situaciones donde se plantee la escasez de fondos como motivo para incumplir con el deber ministerial, se ha entendido que el funcionario demandado es el que tiene el conocimiento y, por ende, la carga de demostrarle al tribunal la prueba que sustenta su alegación. Véase, F.G. Ferris y F.G. Ferris, JR., The Law of Extraordinary Legal Remedies, 1era ed., St. Louis, Ed. Thomas Law Book Company, 1926, págs. 305-306. ("In this kind of a case however, the better rule is that absence of funds is a matter of defense which should be set up in the return, with the burden on respondent to prove such an absence, for the obvious reason that such fact lies peculiarly within the knowledge of the officer whose duty it is to keep the funds and can rarely if ever be certainly known by any other.")

las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria.(…)[43]

El derecho a la educación es de tal importancia que los miembros de la Asamblea Constituyente incluyeron "el afán por la educación" como uno de los factores determinantes en nuestra vida como pueblo democrático.[44]

Por tal razón, este Tribunal también ha reconocido la importancia que disfruta la educación en nuestra jurisdicción. Así pues, hemos resuelto que el Estado tiene un interés apremiante en que la educación, tanto pública como privada, sea una de excelencia.[45] Además, expresamente hemos apuntalado que "a través de la educación se imparte la preparación necesaria para que los ciudadanos participen en el desarrollo social y económico de nuestra vida colectiva".[46]

En consecuencia, debido a las raíces constitucionales que nutren el derecho a la educación, nuestra Asamblea Legislativa ha creado y modificado en varias ocasiones las leyes que buscan hacer realidad dicho derecho. Como hemos mencionado, éste intenta proveer a nuestros niños y adolescentes la oportunidad de recibir una educación de

---

[43] Art. II, Sec. 5 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A, Tomo 1.

[44] Véase, Preámbulo de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1; Véase además, Asoc. Maestros P.R. v. Srio. Educación, 137 D.P.R. 528, 569 (1994), (Naveira de Rodón, J., op. conformidad, escolio 19).

[45] Asoc. Academias y Col. Cristianos v. E.L.A., 135 D.P.R. 150, 164 (1994).

[46] Íd.; Véase, De Paz Lisk v. Aponte Roque, 124 D.P.R. 472 (1984).

excelencia y que propenda al pleno desarrollo de su personalidad, tal y como anhelaban los miembros de la Asamblea Constituyente.

Así pues, estos principios constituyeron la piedra angular de la Ley Orgánica del Departamento de Educación Pública de Puerto Rico, Ley Núm. 149, *supra*, la cual se fundamenta sobre tres premisas básicas:

(1) El estudiante es la razón de ser del sistema educativo y el maestro su recurso principal.

(2) La interacción entre estudiantes y maestros constituye el quehacer principalísimo de la escuela. Las demás actividades escolares, independientemente de su índole, se justifican sólo cuando facilitan la docencia, mejoran la gestión educativa o fortalecen los servicios de la escuela a la comunidad.

(3) Las escuelas pertenecen a las comunidades que sirven y estas deben participar en su gobierno.[47]

Por consiguiente, esta ley ha dispuesto un extenso conglomerado de disposiciones que buscan hacer posible el prominente derecho constitucional a la educación.

Ahora bien, para poder disponer de la controversia ante nos es imperativo delinear los contornos que la ley orgánica establece en torno a las funciones, facultades y obligaciones del Secretario del Departamento de Educación. El Secretario es el responsable de dirigir y supervisar el conjunto de actividades académicas y administrativas del Departamento de Educación. Este principio ha estado vigente

---

[47] Art. 1.02, secs. (a) y (b) de la Ley Núm. 149 de 15 de julio de 1999, según enmendado.

aun bajo la anterior Ley Orgánica del Departamento de Educación, Ley Núm. 68 de 28 de agosto de 1990.

Interpretando la Ley Núm. 68, *supra*, este Tribunal resolvió que el Departamento de Educación constituye un sistema integrado, dirigido por el Secretario, quien ejerce todas las funciones ejecutivas, administrativas, operacionales, de supervisión y planificación de su ley orgánica.[48] Sobre la forma de éste ejercer sus funciones, el Artículo 5.02 dispone que:

> El Secretario encauzará la gestión educativa del Sistema a través de normas reglamentarias, de directrices de política pública y de actividades de planificación, auditoría, fiscalización y evaluación de los procesos académicos y administrativos de las escuelas. Ejercerá las facultades ejecutivas inherentes a su cargo en los casos que prevé la ley o cuando entienda que sea necesario para salvaguardar la armonía y los intereses del Sistema de Educación Pública de Puerto Rico.[49]

Por consiguiente, el Secretario organizará, planificará, dirigirá, supervisará y evaluará las actividades académicas y administrativas del Departamento.[50] Además, **el Secretario es el responsable de implantar la política pública que la Asamblea Legislativa y el Gobernador adopten con el fin de realizar los propósitos que la Constitución de Puerto Rico y la Ley Orgánica del**

---

[48] Hernández v. J. Apel. Sist. Educ. Pub., 147 D.P.R. 840, 845 (1999); Véase, Op. Sec. Just. Núm. 1 de 2002.

[49] 3 L.P.R.A. sec. 145e.

[50] Art. 6.02, inciso (b), 3 L.P.R.A. sec. 145s.

**Departamento de Educación pautan para el Sistema de Educación Pública.**[51]

En relación con las escuelas, el Secretario será directamente responsable, entre otras cosas, de la planificación fiscal del Sistema y la asignación presupuestaria de cada una de éstas, así como de la auditoría fiscal y del examen de los procedimientos de personal.[52] Además, cuidará "que las escuelas de la comunidad, autónomas en su funcionamiento, se articulen dentro de un sistema educativo coherente, orientado por propósitos comunes."[53]

Los Artículos 6.03 y 6.04 de la Ley Orgánica, *supra,* según enmendados, enuncian un conglomerado de facultades y obligaciones del Secretario tanto en el ámbito académico como administrativo. En su función de Director Administrativo del Sistema de Educación Pública de Puerto Rico, la Ley dispone, entre otras obligaciones, que el Secretario, "[p]reparará y administrará el Presupuesto del Departamento, así como los fondos de origen externo que se

---

[51] Íd., inciso (a).

[52] Artículo 5.03, incisos (d) y (f), 3 L.P.R.A. sec. 145f.

[53] Artículo 6.02, inciso (c), 3 L.P.R.A. sec. 145s. Además, "la autonomía operacional otorgada a las escuelas de la comunidad bajo la Ley Orgánica del Departamento de Educación no priva al Secretario de Educación de su facultad para promulgar normas generales para el gobierno del Sistema de Educación Pública, ni lo releva de la obligación de velar por que no se quebrante el sentido de unidad y propósito del Sistema en su conjunto, por lo cual el Secretario de Educación debe implantar las normas y reglamentos relacionados con la administración de las escuelas." Op. Sec. Just. Núm. 1 de 2002.

le asignaren a éste."[54] Es responsable de adoptar la fórmula para determinar el presupuesto de las escuelas del Sistema de Educación Pública, así como del nombramiento del personal del Departamento.[55]

En el ámbito académico, el Secretario tiene la obligación de preparar un Plan de Desarrollo Integral donde se establecerán los objetivos de corto y mediano plazo del Departamento y su plan de trabajo para alcanzarlos.[56] Este plan será de cinco (5) años y se revisará anualmente. Entre las múltiples funciones académicas a ser desempeñadas por el Secretario, además de las antes referidas, se encuentran las siguientes:

[…]

(b) Organizará los programas de estudio del Sistema de Educación Pública con arreglo al patrón de grados y niveles...

(c) Establecerá un currículo básico para el Sistema de Educación Pública con márgenes de flexibilidad suficientes para que las escuelas lo adapten a sus necesidades. **Incluirá como requisito del currículo los cursos de educación física.** (Énfasis nuestro)

(d) Prescribirá el plan de estudios correspondiente a cada grado y nivel del Sistema.[57]

[…]

---

[54] Artículo 6.04, inciso (n); 3 L.P.R.A. sec. 145u.

[55] Íd. Incisos (a) y (l).

[56] Artículo 6.03, inciso (a), 3 L.P.R.A. sec. 145t.

[57] Íd.

### C. *La educación física*

La educación física es la materia responsable de ayudar al desarrollo físico de los estudiantes. En virtud de esto, es incuestionable la importancia que debe ocupar dentro del proceso educativo. El Departamento de Educación reconoció dicha importancia y la enunció en el marco curricular del programa de educación física.[58] En dicho marco, creado en el 2003 con la aprobación del entonces Secretario Dr. César Rey Hernández, se estableció, entre otras cosas, que:

> El Programa de Educación Física **provee** al estudiante las **experiencias necesarias para el desarrollo de las destrezas motoras** indispensables y para alcanzar la madurez física que le permita funcionar eficientemente en el mundo de hoy.
>
> (…)
>
> A través de la educación física **se estimula el pensamiento y se facilita el desarrollo de un ser humano autónomo, capaz de dirigir su aprendizaje a través de las diferentes etapas de su vida.** (…)[59]

El enfoque filosófico del curso de educación física concibe esta disciplina académica como la práctica formal e informal de las actividades físicas en sus diversas

---

[58] Marco curricular del programa de educación física, Instituto Nacional para el Desarrollo Curricular, Departamento de Educación, 2003, *disponible en* http://dde.pr/dePortal/Descargas/Academicos/marcos/EdFisica.pdf, (última visita Feb. 05, 2010), sobre el cual tomamos conocimiento judicial conforme a la Regla 11 de las de Evidencia, 32 L.P.R.A. Ap. IV R.11.

[59] Íd., págs. 6-7.

expresiones.[60] Así, utiliza el movimiento del cuerpo como instrumento básico de aprendizaje, con el cual se influye positivamente en el desarrollo de la personalidad del estudiante, promoviendo su formación social, ética, espiritual, motriz, cognitiva y afectiva.[61] Por tal razón, la educación física es esencial para lograr el desarrollo de un estilo de vida activo, significativo y saludable.[62] Así pues, en virtud de la importancia que ostenta la educación física, el propio Departamento concibió la visión del Programa de manera abarcadora.[63]

Es notorio que la visión que guía al Programa de Educación Física es amplia y meritoria. No sólo procura el desarrollo físico, sino que envuelve diversas experiencias en pro de una integración personal plena del estudiante.

Sin embargo, como ya hemos mencionado, la Ley Núm. 149 (Ley Orgánica), *supra*, derogó tanto la Ley Núm. 68,

---

[60] Íd., pág. 1.

[61] Íd.

[62] Íd.

[63] Se señala, además, que:
> El Programa de Educación Física pretende desarrollar individuos que se constituyan en personas educadas físicamente, que posean las destrezas, los conocimientos y las actitudes necesarias para moverse en una variedad de formas, en armonía con su medio físico y sus semejantes, y capaces de seleccionar la actividad de movimiento más adecuada a sus propósitos personales con el interés de hacerla parte de su estilo de vida. Asimismo será un ser humano conocedor de los procesos que le permitan dirigir sus propios aprendizajes, con la capacidad de trabajar en grupo y de ser un ciudadano productivo que exhiba dominio de la tecnología, y que esté comprometido con la protección del ambiente para el disfrute de todos y defensor de nuestra cultura. Íd., pág. 9.

*supra*, como la Ley Núm. 18 de 16 de junio de 1993, conocida como Ley para el Desarrollo de las Escuelas de la Comunidad, e inadvertidamente, según admitido por la propia Asamblea Legislativa, eliminó el requisito de proveer educación física al estudiante de las escuelas públicas. Es en ese contexto que se crea la Ley Núm. 146, *supra*.

La Exposición de Motivos de dicho estatuto establece que, "[t]omando en cuenta la importancia de la inclusión de esta materia en el currículo escolar, resulta procedente que la Asamblea Legislativa enmiende tal inadvertencia y promueva que se restituya la educación física como requisito en el sistema público de enseñanza". También expresa que el **"proceso educativo está incompleto si no se incluye la instrucción y educación física de los estudiantes como elemento fundamental en su formación"**.[64] (Énfasis suplido.)

La Ley Núm. 146, *supra*, enmendó varios artículos de la Ley Orgánica.[65] El sub-inciso 4 del inciso (c) del Artículo 1.02 sobre Declaración de Propósitos, expone lo siguiente, en torno a que la escuela debe ayudar a sus alumnos a:

---

[64] Exposición de Motivos de la Ley Núm. 146, *supra*.

[65] 3 L.P.R.A. sec. 143a *et seq.* Se añadió un nuevo sub-inciso al inciso (c) del artículo 1.02, un nuevo inciso (s) al Artículo 2.04, un nuevo inciso (e) al Artículo 3.03 y un nuevo Artículo 3.04. Además, se enmendaron los incisos (c) y (t) del Artículo 6.03, estableciendo la educación física como requisitos en el proceso de enseñanza del sistema de escuelas públicas de Puerto Rico.

Adquirir conciencia de la necesidad de desarrollo de **una buena condición física,** haciendo énfasis en la importancia de ser saludables, tanto en su dimensión física como en la mental y espiritual.(Énfasis suplido.)

Por su parte, el inciso (s) del Artículo 2.04, añade a las prioridades de las escuelas la asignación de "salones y facilidades adecuadas para los cursos regulares de educación física."[66] El inciso (e) del Art. 3.03 establece que las escuelas deben promover "el desarrollo físico saludable a través de los requisitos de participación en los cursos de educación física."[67]

El Artículo 3.04 de la Ley Orgánica, artículo neurálgico a la controversia de autos, expone en lo pertinente lo siguiente:

**Las escuelas proveerán a todos sus estudiantes con un mínimo de tres (3) horas semanales de educación física. Se garantizará un maestro de educación física a cada escuela. Para el caso de escuelas con más de doscientos cincuenta (250) estudiantes se nombrarán maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción.**[68] (Énfasis nuestro).

Por su parte, el inciso (c) del Artículo 6.03 de la Ley Orgánica, *supra,* sobre las facultades y obligaciones del Secretario en el ámbito académico, dispone que:

Establecerá un currículo básico para el Sistema de Educación Pública con márgenes de flexibilidad suficientes para que las escuelas lo adapten a sus necesidades. **Incluirá como**

---

[66] 3 L.P.R.A. sec. 143f.

[67] 3 L.P.R.A. sec. 144c.

[68] 3 L.P.R.A. sec. 144c-1.

**requisito del currículo los cursos de educación física**.[69] (Énfasis nuestro)

El inciso (w) del mismo Artículo, a su vez, establece que, el Secretario, "[f]ormulará un plan de dos (2) años, asignando los fondos necesarios, para establecer cursos de educación física en todas las escuelas del Sistema".[70]

En síntesis, las enmiendas a la Ley Orgánica del Departamento de Educación, antes expuestas, exponen la clara intención legislativa sobre los beneficios de la enseñanza de la educación física en las escuelas del sistema público, la prioridad que debe existir en la asignación de facilidades adecuadas y los requisitos de participación que deben promover las escuelas. Además, particularmente señalan el mínimo de horas que de dicho curso se proveerán a los estudiantes, así como las disposiciones en torno a la cantidad específica de maestros a nombrar. A esto se le añade, la disposición de que los cursos de educación física serán parte de los requisitos del currículo escolar. Finalmente, la Asamblea Legislativa dispuso palmariamente el término de 2 años con el que contaba el Secretario para formular un plan que lo llevara a cumplir con el mandato de ley.

## III

Debemos determinar inicialmente si el deber del Secretario de Educación de nombrar a los maestros de

---

[69] 3 L.P.R.A. sec. 145t.

[70] Íd.

educación física adicionales, conforme al Artículo 3.04 de la Ley Orgánica del Departamento de Educación, *supra*, es un deber ministerial o discrecional. Como reseñamos, el Artículo 3.04 dispone que a todos los estudiantes se les provea con un mínimo de tres (3) horas semanales de educación física y que se garantice un maestro de educación física a cada escuela. Además, que en los casos de escuelas con más de doscientos cincuenta (250) estudiantes se nombren maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción.

Como bien señaló el foro apelativo intermedio, el reclamo que hace la Asociación de Maestros está claramente dentro de las funciones y deberes asignados al Secretario. Y es que, en el caso de autos, la ley prescribe y define el deber a ser cumplido con extrema precisión y certeza. No deja espacio alguno en la letra del estatuto para que pueda interpretarse otra cosa que no sea que el funcionario – en este caso el Secretario de Educación – no cuenta con discreción alguna ante el llamado del deber señalado.

En lo pertinente, el Artículo 3.04 de la Ley Orgánica del Departamento es intensamente diáfano e insondablemente específico; existe un mandato de Ley claramente definido y expreso. El legislador estableció específicamente que toda escuela tenía que **garantizar** al menos un (1) maestro de educación física en cada escuela pública del país. Además, la Asamblea Legislativa quiso ser más específica al disponer, sin dar margen para la discreción, los pasos a

seguir en las situaciones de escuelas que tuviesen más de doscientos cincuenta (250) estudiantes. Ciertamente, el legislador manifestó en puridad que en dichos casos el acto a ejecutar era **el nombramiento de un maestro adicional por cada doscientos cincuenta (250) estudiantes adicionales o fracción**. De la letra de la Ley no surge nada que nos demuestre que el legislador le proporcionó discreción al Secretario para cumplir con dicha directriz. Por el contrario, el legislador fue categórico al disponer el escenario y la actuación específica en la que el Secretario debía proceder.

Como hemos visto, el Secretario de Educación tiene unas obligaciones y deberes, establecidos por mandato de la Ley Orgánica del Departamento, que son inherentes a su cargo y para los que goza de plena discreción en la forma en que habrá de ejecutarlos. Sin embargo, el Tribunal de Apelaciones determinó, conforme se colige de su decisión, que la discreción presupuestaria que tiene el Secretario en cierto sentido absorbe, consume o diluye el deber impuesto por el Artículo 3.04, *supra.* No estamos de acuerdo. **La existencia de discreción en la forma de cumplir con un deber ministerial, no transforma tal deber en uno discrecional.** Aunque el Secretario tenga la discreción para realizar un análisis de juicio, "evaluativo" y programático de su presupuesto, **esto no es suficiente para revestir con dicha discrecionalidad todo deber impuesto en su Ley Orgánica.**

Cabe señalar aquí, que el presupuesto de un gobierno ha sido definido como un "programa que dirij[e] toda la actividad gubernamental en su función de orientar los procesos sociales y servir a los intereses del pueblo".[71] Así, los funcionarios ejecutivos gozan de amplia discreción en el ejercicio de dicha función. Sin embargo, esta función "está enmarcada dentro de normas legislativas preexistentes" que los funcionarios ejecutivos no deben ignorar.[72] Por consiguiente, la discreción que ostente un funcionario ejecutivo, en su función presupuestaria, no puede ser invocada para incumplir claras normas legislativas, en contravención al balance de pesos y contrapesos entre la rama ejecutiva y la legislativa.

Por su parte, como hemos expresado, los tribunales debemos considerar cuáles fueron los fines perseguidos por la Asamblea Legislativa al aprobar una ley y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener.[73] "[N]uestra obligación fundamental debe ser imprimirle efectividad a la intención legislativa, propiciando de esta forma la

---

[71] P. Muñoz Amato, Introducción a la Administración Pública, 1 ed., México, Fondo de Cultura Económica, 1954, pág. 141.

[72] Íd., pág. 173; Véase, R. Borja y Borja, Teoría General del Derecho Administrativo, Buenos Aires, Ediciones Depalma, 1985, págs. 356-357; A. Rodríguez Bereijo, El Presupuesto del Estado, Madrid, Editorial Tecnos, 1970, págs. 20-21.

[73] Vargas v. Retiro, 159 D.P.R. 248, 263 (2003).

realización del propósito que persigue la ley".[74] El caso ante nos no es la excepción.

Por ejemplo, al examinar el inciso (c) del Artículo 6.03 de la Ley, vemos que el Secretario goza de discreción y flexibilidad en la confección del currículo básico del Sistema. Sin embargo, se ordena expresamente que dicho currículo incluya **como requisito** los cursos de educación física. Por consiguiente, conforme a la Ley, el Secretario no tiene facultad para eliminar los cursos de educación física del currículo. No albergamos dudas de que la Asamblea Legislativa, para asegurarse del cumplimiento de este mandato, estipuló en el Artículo 3.04 lo relacionado a los nombramientos de maestros de educación física.

Del examen paciente y riguroso de los objetivos legislativos, es indudable que al redactar la Ley Núm. 146 el legislador estableció la importancia del curso de educación física en el sistema escolar de Puerto Rico. Las enmiendas que dicha ley introdujo a la Ley Orgánica del Departamento fueron claras y específicas expresándose que el "proceso educativo está incompleto si no incluye la instrucción y educación física de los estudiantes como elemento fundamental en su formación".[75] Acorde con esta intención, la Asamblea Legislativa dispuso expresa y específicamente, y sin margen a la discreción, el deber de

---

[74] Íd.

[75] Exposición de motivos de la Ley Núm. 149, *supra*.

nombrar los maestros adicionales para su debido cumplimiento.

En virtud de lo anterior, el Departamento de Educación reconoció que con la aprobación de la Ley Núm. 146 se estableció "la enseñanza de la educación física con **carácter de obligatoriedad** en todos los grados del Sistema Público de Enseñanza y con un mínimo de ofrecimiento de tres horas a la semana".[76] (Énfasis suplido.) Además, los pasados Secretarios, Dr. César Rey Hernández y Dr. Rafael Aragunde, señalaron en sendas Cartas circulares, sobre la política pública del Programa de educación física, que:

> En su exposición de motivos, la Ley Núm. 146 establece que el proceso educativo está incompleto si no incluye la instrucción de la educación física como parte de la formación del estudiante. En la Ley se reconoce la importancia de que la escuela ayude a los estudiantes a cobrar conciencia de la importancia de desarrollar una buena condición física, con énfasis en la salud física, mental y espiritual. La Ley está en armonía con las recomendaciones de la Asociación Nacional para el Deporte y la Educación Física de los Estados Unidos de Norteamérica (NASPE) y la Asociación de Educación Física y Recreación de Puerto Rico (AEFR). Ambos grupos profesionales recomiendan el ofrecimiento de la educación física como asignatura regular y requerida para todos los estudiantes en todos los grados escolares.
>
> La Ley Núm. 146 **especifica**, en su Artículo 2.04, que en las escuelas se asignarán salones y facilidades adecuadas para los cursos regulares de educación física y que se promoverá el desarrollo saludable, a través del requisito de participación en los cursos de educación física. El Artículo 3.04 **ordena** a las escuelas del Sistema Público que provean a todos sus estudiantes un mínimo de tres (3)

---

[76] Marco curricular del programa de educación física, *supra*, págs. 73-74.

horas semanales de educación física y **establece** que cada escuela debe contar con los maestros necesarios para atender su matrícula. En el inciso 3.03 de la Ley Núm. 146 se estipula que se debe promover el desarrollo físico del estudiante por medio de su participación en los cursos del Programa.[77] (Énfasis suplido).

Hemos de notar que, la letra del Artículo 3.04 de la Ley Orgánica es clara en su mandato. Determinar que en este caso el deber de nombrar los maestros de educación física adicionales es un deber discrecional, como erróneamente concluye el foro apelativo intermedio, convertiría el ejercicio legislativo en un procedimiento fútil. Y es que, al establecerse un mandato que de su propia faz no es discrecional, debemos presumir que el legislador consideró las consecuencias presupuestarias que éste acarrearía, correspondiendo entonces al funcionario a quien atañe el cumplimiento de ese deber ministerial la asignación o solicitud de los fondos necesarios para cumplir con el mandato de ley.

Era esa presunción la que el Secretario de Educación estaba obligado destruir con prueba preponderante, y convencer al foro primario, como parte del análisis de los factores que está obligado a considerar, que no era posible

---

[77] Carta Circular Núm. 8-2007-2008, Política Pública sobre la Organización del Programa de Educación Física en los Niveles Elemental y Secundario de las Escuelas Públicas de Puerto Rico, pág. 2, *disponible en* http://www.de.gobierno.pr/sites/de.gobierno.pr/files/cartas/08-2007-2008.pdf (última visita Feb. 08, 2010) sobre la cual tomamos conocimiento judicial conforme a la Regla 11 de las de Evidencia, 32 L.P.R.A. Ap. IV R.11; Véase, Carta Circular Núm. 18-2002-2003, Normas para la Enseñanza y el Funcionamiento del Programa de Educación Física en los Niveles Elemental y Secundario de las Escuelas Públicas de Puerto Rico, pág. 2, disponible en el Marco curricular, *supra,* págs. 75-89.

cumplir con el deber ministerial, sin que se afectaran los fondos destinados para otros asuntos concernientes al interés público.

Han transcurrido diez (10) años desde que se aprobó la Ley Núm. 146, *supra*, y el Secretario del Departamento de Educación aún no ha cumplido con el deber ministerial antes expuesto. Durante este periodo de tiempo sólo se han contratado cerca de cuatrocientos maestros de educación física adicionales.[78] De dos mil trescientos sesenta y siete (2,367) maestros de educación física existentes para el año 2000, hoy existen poco más de dos mil setecientos (2,700), cifra que se ha mantenido sin cambios sustanciales desde el año 2004.[79]

---

[78] Véanse, los Presupuesto del Departamento de Educación de los años fiscales 2000-2001 al 2009-2010, *disponible en* http://www.presupuesto.gobierno.pr (última visita Feb. 08, 2010), sobre los cuales tomamos conocimiento judicial conforme a la Regla 11 de las de Evidencia, 32 L.P.R.A. Ap. IV R.11; Véase además, Alegato del Procurador General.

[79] Íd. Cabe señalar que tanto el Procurador General en su alegato, como el propio Departamento de Educación en su recurso ante el Tribunal de Apelaciones, expresaron que dicho Departamento había creado setecientas veintiséis (726) plazas adicionales de maestros de educación física. Sin embargo, más allá de estas alegaciones no encontramos prueba alguna que compruebe la información.

De hecho, al examinar los presupuestos del Departamento del año 2000 al 2009, éstos no reflejan la cantidad alegada. Al contrario, los presupuestos reflejan pocos cambios, siendo el mayor en el año 2004 y no alcanza las quinientas (500) plazas nuevas. Esto en contraposición con el mandato del presupuesto recomendado de 2002 el cual expresaba que:

> **"Este presupuesto incluye recursos para el nombramiento de 500 nuevos maestros de educación física, como fase inicial para brindarle a todos nuestros estudiante[s] la oportunidad de desarrollarse, tanto física como mentalmente en un ambiente adecuado dentro del sistema público de enseñanza."** Presupuesto del Departamento de Educación para el año fiscal 2001-2002 (Énfasis suplido.)

El argumento principal del Departamento en el caso de autos es que, dado el impacto presupuestario que supone los nombramientos conforme lo establece el Art. 3.04, la creación de todas las plazas adicionales necesarias en un término de cuatro años, "afectaría el cumplimiento de otras obligaciones...". No obstante, el Departamento no presentó prueba que persuadiera al foro primario en torno a esas "otras obligaciones" que alegadamente se afectarían al intentar dar cumplimiento cabal al deber ministerial impuesto.

Por otro lado, surge ostensiblemente del historial legislativo de la Ley Núm. 146, que la Comisión de Educación y Cultura de la Cámara de Representantes conocía sobre las repercusiones económicas que las enmiendas ocasionarían, a través de una comunicación hecha por la Asociación de Educación Física y Recreación de Puerto Rico. En ésta se advirtió sobre el costo aproximado de treinta y dos millones de dólares ($32,000,000.00) que implicarían los cambios, sólo en concepto de nómina.[80] Por lo tanto, la Asamblea Legislativa tuvo presente el impacto presupuestario que las enmiendas acarreaban.

Evidentemente, el cumplimiento de todo deber ministerial, por tenue que sea, conlleva la erogación de fondos de un presupuesto que, como regla general, el propio

---

[80] Véase, Comunicación de la Asociación de Educación Física y Recreación de Puerto Rico, al Hon. Tomás Bonilla Feliciano, Presidente de la Comisión de Educación y Cultura de la Cámara de Representantes, 7 de marzo de 2000, sobre el P. de la C. 2970.

funcionario está obligado a administrar. De manera que, si no se cuenta con una partida presupuestaria para dar cumplimiento a ese deber ministerial ciertamente ello podría afectar otras partidas para las cuales sí se había presupuestado. No obstante, como anteriormente advertimos, tal circunstancia tenía que haber sido objeto de prueba. Se debía convencer al juzgador de que la concesión del recurso provocaba irremediablemente un déficit en otras partidas, que no podría ser subsanado, no en pese la pericia administrativa del funcionario. Además, el funcionario debió demostrar que dicho déficit a su vez afectaba otros servicios. Servicios que se enmarcan en un interés público superior al deber ministerial que el auto de *mandamus* busca hacer cumplir.

De otra parte, somos de la opinión de que la expedición del *mandamus,* en el caso de autos, favorece el interés público. ¿O es que el pleno desarrollo de nuestros niños y adolescentes no es un interés público de alto rango? ¿Permitiremos que se continúe ignorando el programa de educación física y las necesidades de los maestros y estudiantes, en claro contrasentido con la clara expresión e intención legislativa? De ninguna manera.

**Por todo lo anterior, concluimos que no erró el Tribunal de Primera Instancia al determinar que el deber impuesto en el Art. 3.04 de la Ley Orgánica del Departamento de Educación, con relación al nombramiento de maestros adicionales y el mínimo de horas semanales de**

**educación física, es un deber ministerial y que, por lo tanto, procedía expedir el auto de *mandamus* solicitado por la Asociación de Maestros.**

### IV. *Situación económica actual como factor para el diseño del remedio*

Como sabemos, las determinaciones judiciales no deben operar en un vacío, sino que necesariamente deben ajustarse a la realidad que vive la sociedad sobre la cual han de implantarse. Así pues, nos consta la difícil realidad económica que afronta el País.

Somos de la opinión que la discreción que nos otorga el auto de *mandamus*, junto a su naturaleza de remedio en equidad, nos permite diseñar un remedio compatible con los intereses públicos envueltos y no nos ata a un remedio fijo.[81] Por tal razón, y a base de los cambios fácticos que pueden haber ocurrido en el transcurso del litigio, la realidad económica actual, el interés en fomentar una educación de excelencia y nuestra discreción de diseñar un plan compatible con todos los intereses envueltos, entendemos que es acertada la disposición del Tribunal de Primera Instancia de ordenarle al Secretario la preparación de un plan de nombramientos que tuviese como objetivo cumplir con el mandato de ley, conforme a la capacidad del Departamento. No obstante, por los fundamentos antecedidos, el plan debe ser elaborado con premura y, una vez sea

---

[81] Véase, Rivé Rivera, op. cit., págs. 111-112.

estructurado en el Tribunal de Primera Instancia, éste deberá ser cumplido en un término de dos años.

### V.

En armonía con lo antes señalado, se revoca la Sentencia del Tribunal de Apelaciones, Región Judicial de San Juan; se reinstala la Sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan y se devuelve el caso a ese Tribunal para ulteriores procedimientos compatibles con lo aquí resuelto. De acuerdo con el Art. 3.04 y el Art. 6.03(w) de la Ley Orgánica del Departamento de Educación, *supra*, el Secretario deberá presentar un plan que tenga como objetivo cumplir a cabalidad con el mandato de ley, conforme a la capacidad del Departamento. Una vez el plan sea estructurado en el Tribunal de Primera Instancia éste deberá ser cumplido en un término de dos años.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros de
Puerto Rico, por sí y en
representación de sus socios
Maestros de Educación Física

  Demandantes-Peticionarios

       v.                      CC-2005-0777

Hon. César Rey Hernández,
PH.D. en su carácter oficial
como Secretario del Departamento
de Educación; Estado Libre
Asociado de Puerto Rico

  Demandados-Recurridos

**SENTENCIA**

San Juan, Puerto Rico, a 16 de febrero de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones, Región Judicial de San Juan; se reinstala la Sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan y se devuelve el caso a ese Tribunal para ulteriores procedimientos compatibles con lo aquí resuelto. De acuerdo con el Art. 3.04 y el Art. 6.03(w) de la Ley Orgánica del Departamento de Educación, *supra*, el Secretario deberá presentar un plan que tenga como objetivo cumplir a cabalidad con el mandato de ley, conforme a la capacidad del Departamento. Una vez el plan sea estructurado en el Tribunal de Primera Instancia éste deberá ser cumplido en un término de dos años.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta emitió Opinión de conformidad. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita. El Juez Asociado señor Martínez Torres disiente con la

siguiente expresión:  "El Juez Asociado señor Martínez Torres disiente por la falta de justiciabilidad de esta controversia debido a la ausencia de legitimación activa de la parte peticionaria, Asociación de Maestros de P.R."  La Jueza Asociada señora Pabón Charneco disiente con opinión escrita.



                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, por sí y en representación de sus socios Maestros de Educación Física  Demandantes-peticionarios<br><br><br>v.<br><br>Hon. César Rey Hernández, PH.D. en su carácter oficial como Secretario del Departamento de Educación; Estado Libre Asociado de Puerto Rico  Demandados-recurridos | *CERTIORARI*<br><br><br><br>CC-2005-777 |

En San Juan, Puerto Rico, a 16 de febrero de 2010.

Opinión de Conformidad emitida por la Jueza Asociada señora Fiol Matta

Coincido con la conclusión a la que llega la mayoría de este Tribunal porque entiendo que la ley que se cuestiona en este recurso constituye un acto legislativo válido cuyo objetivo es concretar y hacer viable el derecho constitucional a la educación. Nuestra Ley Suprema, la Constitución, persigue el propósito de que todo ser humano pueda tener acceso a una educación que le permita el desarrollo integral, es decir, físico, emocional e intelectual. A esos efectos, los constituyentes incluyeron como parte de nuestra Carta de Derechos lo siguiente:

> **Toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del**

> **respeto de los derechos del hombre y de las libertades fundamentales**. Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, será obligatoria para la escuela primaria…[82]

Al amparo de esta disposición de nuestra Constitución, a través de la Ley Núm. 146 del 10 de agosto del 2000 que enmendó la Ley Núm. 149 del 15 de julio del 1999, conocida como Ley Orgánica del Departamento de Educación de Puerto Rico, la Asamblea Legislativa hizo obligatorio incluir "como requisito del currículo los cursos de educación física".[83]

La idea principal del estatuto era restablecer[84] la clase de educación física como un requisito de graduación para los estudiantes de escuelas públicas.[85]  Esto, para promover a través del ejercicio, según estudios realizados por expertos en la materia, "el desarrollo de fortaleza y resistencia muscular, flexibilidad y desarrollo de la capacidad cardiovascular" de los niños. De igual manera, se perseguía reforzar "lo aprendido en

---

[82] Artículo 2, sección 5, Const. E.L.A., 1 L.P.R.A. sec. 5. (Énfasis suplido).

[83] 3 L.P.R.A. sec. 145t (c).

[84] A través  de la Ley Núm. 68 del 28 de agosto de 1990, conocida como Ley Orgánica del Departamento de Educación, se incluyó el curso de educación física como parte de los requisitos académicos.  Sin embargo, al aprobarse la Ley Núm. 149 del 15 de julio de 1999, que derogó la Ley Núm. 68, se eliminó ese requisito.  Al percatarse de esto, la Asamblea Legislativa procedió a enmendar la Ley Orgánica del Departamento de Educación, mediante la aprobación de la Ley Núm. 146 del 10 de agosto del 2000, para restituir la clase de educación física como un requisito del sistema de educación pública. Exposición de Motivos de la Ley Núm. 146 del 10 de agosto del 2000, pág. 980, 981.

[85] _Íd_, pág. 980.

todo el currículo", facilitar "el desarrollo en el estudiante de responsabilidad respecto a su salud y condición física" y ayudar "a los jóvenes a trabajar para lograr alcanzar sus metas."[86]

Para cumplir con estos propósitos se incluyó, como parte de las facultades y obligaciones en el ámbito académico del Secretario del Departamento de Educación[87], la responsabilidad de formular "un plan de dos (2) años, asignando los fondos necesarios, para establecer cursos de educación física en todas las escuelas del Sistema."[88] Específicamente, la Rama Legislativa dispuso que:

> Las escuelas proveerán a todos sus estudiantes con un mínimo de tres (3) horas semanales de educación física. Se garantizará un maestro de educación a cada escuela. Para el caso de escuelas con más de doscientos cincuenta (250) estudiantes se nombrarán maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción. Disponiéndose, además, que se incluya la integración de instrumentos de tecnología moderna para proveer información sobre la educación física a los estudiantes. Se entenderán como instrumentos de tecnología moderna las computadoras, equipos de comunicación y equipos audiovisuales.[89]

Al examinar la exposición de motivos de la Ley Núm. 146 del 2000 y su parte dispositiva, es obligatorio

---

[86] *Íd*.

[87] Otra facultad y obligación académica del Secretario de Educación es "establecer un programa a nivel elemental, intermedio y secundario de moral y ética gubernamental." Esta también debe formar parte del currículo académico, por lo que es un requisito indispensable de graduación. 3 L.P.R.A. sec. 145t (f).

[88] 3 L.P.R.A. sec. 145t (w).

[89] 3 L.P.R.A. sec. 144c-1.

concluir que el Secretario del Departamento de Educación tiene el deber de proveerle educación física a los estudiantes de las escuelas públicas. Esta responsabilidad no es discrecional, sino obligatoria. Cuando el texto de una ley es claro no es necesario que sea interpretado, pues éste representa la intención legislativa.[90]

Recordemos que las agencias son entes administrativos creados por la Rama Legislativa y responsivas a los poderes que ésta le ha delegado a través de su ley orgánica. Es cierto que la propia legislatura le ha concedido discreción al Secretario de Educación para determinar las prioridades educativas y presupuestarias de su Departamento. Sin embargo, es igualmente correcto que la Asamblea Legislativa tiene la facultad de establecer, conjuntamente, algunas de esas prioridades educativas. Así lo hizo, cuando enmendó la ley orgánica del Departamento de Educación para incluir como mandatorio la clase de educación física.

Liana Fiol Matta
Jueza Asociada

---

[90] _Romero Barceló v. E.L.A._, 169 D.P.R. 460, 476-477 (2006); _Ortíz v. Municipio San Juan_, 167 D.P.R. 609, 617 (2006); _Departamento de Hacienda v. Telefónica_, 164 D.P.R. 195, 205 (2005).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, por sí y en representación de sus socios Maestros de Educación Física<br>　　Demandantes-Peticionarios<br>　　　　　v.<br>Hon. César Rey Hernández, PH.D. en su carácter oficial como Secretario del Departamento de Educación; Estado Libre Asociado de Puerto Rico<br>　　Demandados-Recurridos | CC-2005-777 |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 16 de febrero de 2010

Disiento de la decisión que hoy anuncia este Tribunal por considerar que la mayoría no ha aplicado correctamente la normativa sobre el *mandamus* y cuándo procede su expedición. Considero que no es un deber ministerial del Secretario de Educación la exigencia que recoge la Ley núm. 146 de 10 de agosto de 2000, de nombrar cierto número de maestros de educación física para el sistema de educación pública del país. Pero aún cuando en efecto se tratara de un deber ministerial, no procedería librar el auto solicitado ante el impacto que su concesión tendría sobre el interés público. Este último factor no ha sido sopesado adecuadamente por la mayoría, a pesar de ser el criterio de mayor importancia y peso al momento de conceder el auto.

I

El 17 de noviembre de 2003 la Asociación de Maestros de Puerto Rico (la "Asociación"), en representación de sus asociados, maestros de educación física, presentó una petición de *mandamus* ante el Tribunal de Primera Instancia en contra del entonces Secretario de Educación, Hon. César Rey Hernández, en su carácter oficial. En la demanda instada se alegó que el Secretario incumplía un deber ministerial establecido en la ley orgánica del Departamento de Educación (el Departamento) al no nombrar un maestro de educación física por cada doscientos cincuenta estudiantes. Se adujo que el incumplimiento con ese deber ministerial afectaba los intereses de los demandantes así como del estudiantado en general.

La petición de *mandamus* no informaba que se le hubiese hecho un requerimiento previo al Secretario de Educación para que cumpliera con su deber ministerial y de que éste se negara a ello. La demanda no indicaba además porque no era necesario hacer tal requerimiento.

El 29 de enero de 2004 el Departamento compareció ante el foro primario y contestó la petición de *mandamus*. En su contestación, arguyó que a partir del 2001 se había iniciado un proceso escalonado para llenar las plazas necesarias para ofrecer la materia de educación física a tenor con lo dispuesto en la Ley núm. 146 del 10 de agosto de 2000. Se indicó en el escrito presentado que a ese momento, ya se habían logrado contratar los servicios de 2,715 profesores en esta materia. Se señaló, que para cumplir con lo exigido por la Asociación de Maestros se tendría que contratar 1,000

maestros adicionales, lo que representaba, en ese momento, una carga muy onerosa para el Departamento. Finalmente, se apuntó en la contestación que ya que el Departamento había cumplido con los requisitos mínimos de la Ley núm. 146 y, ante la necesidad de administrar sabiamente sus recursos, era improcedente que se expidiese el auto de *mandamus.*

Posteriormente, la Asociación presentó una solicitud de sentencia sumaria. El Departamento se opuso reiterándose en que no se había negado a cumplir con las disposiciones de la Ley núm. 146, sino más bien, que su situación presupuestaria dificultaba el reclutamiento adicional de maestros de educación física. El 15 de octubre de 2004, el foro de instancia dictó sentencia concediendo el remedio solicitado por la Asociación. En la sentencia dictada se le ordenó al Departamento a someter un plan de nombramientos que tuviese como objetivo cumplir con lo dispuesto en la Ley núm. 146.

Inconforme, el Departamento de Educación acudió ante el Tribunal de Apelaciones. Este foro dictó sentencia revocatoria. El Tribunal de Apelaciones, basándose en la responsabilidad del Secretario de Educación de establecer y administrar el presupuesto del Departamento, además de establecer los términos y condiciones de cómo se llevará a cabo el reclutamiento del personal que compondrá el sistema, concluyó que se trataba de un deber discrecional del Secretario y no ministerial. En apoyo de su conclusión, dicho foro indico que "la determinación que haga el Secretario en

cuanto a nombrar los maestros . . . conlleva un análisis de juicio, evaluativo y programático del presupuesto que le toca administrar . . . [se trata] de una determinación que conlleva la discreción administrativa según la realidad presupuestaria del Departamento."

Inconforme, la Asociación acudió ante este Foro. En el día de hoy, este Tribunal revoca al foro intermedio y dictamina que procedía librar el auto de *mandamus* solicitado tal y como lo había resuelto el foro de instancia. Por considerar desacertada la postura del Tribunal, disiento del criterio mayoritario.

## II

Como sabemos, el auto de *mandamus,* por disposición expresa de ley, es altamente privilegiado y de naturaleza discrecional. 32 LPRA sec. 3421. Véase, *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454-455 (2006) y casos allí citados. Se expide para ordenar a una persona o personas naturales, a una corporación o a un tribunal de inferior jerarquía, a que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones, "cuando ese deber no admite discreción en su ejercicio, sino que es ministerial." (Escolio omitido.) D. Rivé Rivera, *Recursos Extraordinarios*, San Juan, 2da. Ed., Programa de Educación Jurídica Continua, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1996, pág. 107. Véase, 32 LPRA. secs. 3422, 3423. Véase también, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* Tomo II, Publicaciones JTS, San Juan, pág. 925 ss. Consecuentemente, como asunto de umbral, hay que determinar si la actuación que se exige,

en este caso del Secretario de Educación, constituye un deber de naturaleza ministerial. Para ello hay que preguntarse entonces: ¿qué es un deber ministerial?

Un acto o deber es ministerial, cuando la ley prescribe y define el deber que tiene que ser cumplido de forma tal que no le permite al funcionario el ejercicio de la discreción o juicio sobre si cumple o cómo cumple con ese deber impuesto. *Partido Popular v. Junta de Elecciones,* 62 DPR 745, 749 (1944). Si por el contrario, el funcionario "tiene alguna discreción para ejecutar el acto o en la manera de ejecutarlo, entonces no debe librarse el auto de *mandamus*…." *Pagán v. Towner*, 35 DPR 1, 3 (1926). Para precisar qué constituye un deber ministerial, se requiere algo más que la aplicación mecánica de una fórmula inflexible. En *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 418 (1982) indicamos que la determinación de la existencia de ese deber ministerial "es una cuestión sujeta a interpretación judicial que no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto. Tal determinación ha de surgir del examen y análisis de todos los elementos útiles a la función interpretativa; del 'examen paciente y riguroso que parte de la letra de la ley y evalúa todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal'." Ello supone, a mi juicio, que no bastará con una lectura aislada de la disposición legal cuyo cumplimiento se exige.

Por otro lado, y como habíamos indicado, la ley define al auto de *mandamus* como privilegiado, lo que

implica que éste no procede como cuestión de derecho sino que su expedición descansa en la sana discreción del tribunal. Hemos indicado previamente que la discreción judicial "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho…." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). En *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990) indicamos que el adecuado ejercicio de la discreción judicial *"está inexorable e indefectiblemente atado al concepto de la razonabilidad."* (Énfasis en original.) A fin de cuentas, "[d]iscreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera…." *Ibid*.

En *Noriega v. Hernández Colón*, 135 DPR 406 (1994) identificamos varios factores que deben considerarse al ponderar si se libra el auto, identificado ya el deber ministerial. Allí indicamos que entre los factores a considerar se encuentran: "el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar envueltos; el evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros." *Noriega v. Hernández Colón, ante,* pág. 448. Sobre el primero de los factores, el impacto sobre el interés público, señalamos que era **"[e]l factor de mayor importancia y peso."** (Énfasis nuestro.) *Ib.* Véase además*, Báez Galib v. CEE II*, 152 DPR 382, 392 (2000). Véase también, C. Antieau, *The Practice of Extraordinary Remedies*, Oceana Publications, Inc., vol.

I, New York, 1987, pág. 303. ("Mandamus is denied when it is sought to compel performance of an act that would be contrary to public policy.") Con lo cual, cuando se determine que los intereses públicos se perjudicarán si se libra el auto solicitado, el tribunal debe negar su expedición. No hay duda que ínsito a nuestra función judicial, está considerar las repercusiones que sobre la cosa pública han de tener nuestros dictámenes. De igual manera, debemos evitar inmiscuirnos, indebidamente, en procedimientos atinentes al Poder Ejecutivo y Legislativo.

Dada la naturaleza privilegiada del auto de *mandamus,* su concesión debe estar precedida, necesariamente, por el más sosegado y afinado análisis de todos los intereses comprendidos en la controversia. En el caso paradigmático, *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 283-284 (1960), lo expresamos de la siguiente manera:

> Para que deba expedirse el auto de *mandamus*, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto 'altamente privilegiado' . . . y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes tanto al determinar si debe o no expedirse el auto como fijar el contenido de la orden, una vez resuelta en la afirmativa. En otras palabras, el remedio no se concede *ex debito justitiae* y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino

equilibrio posible entre los diversos intereses en conflicto.

De otra parte, el procedimiento para la expedición de un *mandamus* ante el Tribunal de Primera Instancia está preceptuado en la Regla 55 de las de Procedimiento Civil, 32 LPRA Ap. II R.55, y nuestra jurisprudencia interpretativa. En cuanto a los requisitos del contenido de las alegaciones de una solicitud de *mandamus,* hemos exigido que en ésta el peticionario describa claramente cuál es ese deber ministerial cuyo cumplimiento se exige así como la fuente legal para el mismo. **También hemos exigido que se alegue en la petición que se le hizo un requerimiento previo al demandado de que cumpla con lo que se estima es un deber ministerial**. Véanse, *Carro v. Matos*, 67 DPR 464 (1947); *Medina v. Fernós Isern, Comisionado*, 64 DPR 857 (1945); *Pluguez v. Junta de Retiro*, 50 DPR 693 (1936); *Mullenhoffy Korber v. Quiñones*, 40 DPR 61 (1903); *Municipio v. American R.R. Co.,* 30 DPR 895 (1922).

Sobre este requisito, en *Negrón v. El Superintendente de Elecciones*, 11 DPR 366 (1906), indicamos lo siguiente:

> Además, está bien establecido por las resoluciones de las más respetables cortes que **antes de poder dictarse el auto de *mandamus,* es preciso que se solicite del funcionario el ejercicio del acto, o de la persona que tiene la obligación de ejercerlo, negándose tal funcionario o persona a cumplir con el deber que le impone la ley. Se concede universalmente que, es la regla general, que es necesaria tal solicitud, y la negativa del demandado para proceda dictar el auto de *mandamus.*** Dicha negativa debe ser, o directamente, o por conducta de la cual puede desprenderse conclusivamente dicha negativa, siendo derecho del demandado que se le dé una oportunidad de hacer o de negarse a hacer lo

que se le exige antes de recurrir a la corte para obligarse a ello. [. . .]

**Siendo necesario en primer lugar tal requerimiento y negativa, para poder dictarse el auto de *mandamus*, es preciso que aparezca, mediante las debidas alegaciones en la solicitud, y a menos que aparezca así, la petición es defectuosa de modo fatal.** (Énfasis nuestro.)

*Negrón v. El Superintendente de Elecciones, ante,* pág. 374. En igual sentido, véanse: *Zavala v. El Consejo Ejecutivo,* 9 DPR 211 (1905); *Morales v. Wilson*, 16 DPR 751 (1910); *Alemañy v. Registrador,* 39 DPR 635 (1929); *Feliciano v. López*, 48 DPR 530 (1935); *Medina v. Fernós Isern*, *ante*; *Suárez v. Corte*, 65 DPR 850 (1946).

Recordemos que el *mandamus* es un recurso extraordinario y sólo procede en situaciones excepcionales. Su concesión inmiscuye al Poder Judicial en el quehacer diario de la Rama Ejecutiva o la Legislativa ya que se le va a ordenar a uno de sus funcionarios que ejecute cierto acto. Ello aconseja cautela. Nuestra exigencia de que se alegue en la petición que se ha interpelado al demandado es manifestación de esa cautela.

Si bien la regla general es que se requiere la interpelación del demandado antes de considerar una solicitud de *mandamus*, hemos elaborado excepciones a esta norma. Así, cuando se trata de un asunto de interés público el requerimiento previo es innecesario. En el pasado, hemos determinado que casos que involucran asuntos de naturaleza electoral no requieren una notificación previa por ser éstos casos que involucran asuntos de alto interés público. *E.g., Torres v. Asamblea Municipal de Guánica*, 33 DPR 349 (1924);

*Martínez Nadal v. Saldaña*, 33 DPR 721 (1924)    En *Martínez Nadal v. Saldaña, ante*, pág. 736, reconocimos que "existe una distinción entre los deberes de carácter público y los deberes de naturaleza particular que afectan solamente a los derechos de individuos.    En tales casos la misma ley substituye al requerimiento y la omisión en cumplir el deber requerido es equivalente a una negativa."    Véase, *Medina v. Fernós Isern, ante*.

También hemos determinado que es innecesario hacer un requerimiento previo al demandado cuando se alegue específicamente en la solicitud de *mandamus* que hacerlo sería inútil porque se hubiese denegado.    "[C]uando la actitud del funcionario hacia la cuestión ha sido oficialmente declarada en tal forma que un requerimiento que se le hiciera sería inútil e infructuoso, la razón para la regla de que se haga el requerimiento cesa."    *Medina v. Fernós Isern, ante*, pág. 860.

Aunque de ordinario, el craso incumplimiento con el requisito de interpelación conllevaría la desestimación de la petición de *mandamus,* en este caso considero que excepcionalmente, no se debe desestimar la petición instada.    La parte demandada no ha planteado en ninguna etapa de los procedimientos que se desestimase el recurso presentado.    Por el contrario, ha centrado su discusión en la improcedencia de la petición por no constituir el deber impuesto uno de naturaleza ministerial.    Considero entonces que con su actuación ha renunciado a este planteamiento.    Además, tomando en cuenta la etapa procesal en que nos encontramos y ante la posición clara del Departamento de Educación, soy del

criterio que  no serviría ningún propósito práctico desestimar la petición de *mandamus.*

Pasemos ahora a evaluar las disposiciones de ley orgánica del Departamento de Educación, con particular atención a lo dispuesto en la Ley núm. 146 y el alegado deber ministerial que ésta le impone al Secretario de Educación.

III

A

Sin duda, cualquier análisis sobre el derecho a la educación en Puerto Rico tiene que partir de la Sección 5 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico donde se consagra, como derecho fundamental de todo ciudadano, el acceso a una instrucción pública gratuita.  Aquí se dispone:

> Toda persona tiene derecho a una educación que propenda el pleno desarrollo de su personalidad y el fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales.  Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario.  La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria.  La asistencia obligatoria a las escuelas públicas primarias, hasta donde las facilidades del Estado lo permitan, según se dispone en la presente, no se interpretará como aplicable a aquellos que reciban instrucción primaria en escuelas establecidas bajo auspicios no gubernamentales.

Art. II, sec. 5, Constitución del Estado Libre Asociado de Puerto Rico.  Esta disposición constitucional tiene como objetivo "definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario" gratuito, sujeto a la disponibilidad de los recursos necesarios para su

ejecución. *Asoc. Academias y Col. Cristianos v. ELA*, 135 DPR 150, 168-169 (1994). Y es que los constituyentes fueron conscientes de que a pesar de la necesidad imperiosa de erradicar el analfabetismo que arropaba al país, el compromiso del Estado de conferirle plena eficacia al mandato constitucional previamente transcrito, **tenía que estar sujeto a que las circunstancias económicas de Puerto Rico permitiesen su realización**. 2 *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, 1961, págs. 1462-1476.

Para instrumentar las aspiraciones contenidas en el mandato constitucional, la Asamblea Legislativa aprobó en 1990 una ley orgánica para el Departamento de Educación (Ley núm. 68 de 28 de agosto de 1990). Este estatuto hizo compulsorio en Puerto Rico la enseñanza de un curso de educación física en todos los grados del sistema de instrucción pública. Posteriormente, al aprobarse una nueva ley orgánica para el Departamento de Educación en 1999, Ley núm. 149 de 15 de julio de 1999 conocida como Ley para el Desarrollo de las Escuelas de la Comunidad, se dejó fuera el requisito de enseñanza del curso de educación física. Para remediar tal omisión, se enmendó la ley orgánica del Departamento mediante la Ley núm. 146 para reinsertar la educación física al currículo del Departamento de Educación. Véase Exposición de Motivos de Ley núm. 146.

Como hemos indicado, la controversia en este caso gira en torno al alcance de las disposiciones de la Ley núm. 146 y la responsabilidad que ésta impuso sobre el Secretario de Educación como resultado de las enmiendas

que introdujo a la ley orgánica del Departamento. Así, la Ley núm. 146 estableció que la escuela debe ayudar a sus alumnos a, entre otras cosas, "[a]dquirir conciencia de la necesidad de desarrollo de una buena condición física haciendo énfasis en la importancia de ser saludables, tanto en su dimensión física, como en la mental y espiritual." 3 LPRA sec. 143(a). Se reconoció además, que las escuelas deben asignar salones y facilidades adecuadas para cursos regulares de educación física y de bellas artes. 3 LPRA sec. 143g(s). El Secretario por su parte, incluirá como parte del currículo básico confeccionado para el sistema de instrucción pública cursos de educación física. 3 LPRA sec. 145t(c). Para materializar la enseñanza de la educación física, integrada como requisito al currículo básico, la ley dispone:

> Las escuelas proveerán a todos sus estudiantes con un mínimo de tres (3) horas semanales de educación física. Se garantizará un maestro de educación física a cada escuela. Para el caso de escuelas con más de doscientos cincuenta (250) estudiantes se nombrarán maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción.

3 LPRA sec. 143c-1.

La controversia que nos ocupa en esta ocasión, como ya indicamos, gira en torno a esta última disposición. Nuestra tarea consiste en analizar la ley orgánica del Departamento de Educación en su conjunto para así calibrar el alcance de las enmiendas que la Ley núm. 146 le introdujo.

B

La Ley núm. 149, ley orgánica del Departamento, dispuso para un nuevo modelo educativo en nuestro país

con la creación de las llamadas escuelas de la comunidad. La ley le confiere a las escuelas de la comunidad autonomía para la toma de decisiones sobre sus asuntos académicos, fiscales y administrativos dentro de los límites que la propia ley establece. Ello no obstante, la ley "no prevé que cada escuela sea un universo aparte, sin vínculos con las demás y fuera de la jurisdicción del Departamento." Exposición de Motivos de la Ley núm. 149. Todo lo contrario, todas las escuelas que conforman el sistema de educación pública están bajo la jurisdicción del Secretario, quien establece la pauta general impartiéndole coherencia al sistema educativo como un conjunto. *Ibid.* Ninguna de las disposiciones de la ley "menoscaba la autoridad que la Constitución le otorga al Secretario para dirigir la educación pública en Puerto Rico." *Ibid.* Así, aun cuando algunas de las funciones administrativas de las escuelas de la comunidad le hayan sido transferidas del nivel central, éstas deberán seguir el ordenamiento normativo que establezca el Secretario de Educación para el sistema de enseñanza pública en general. Véase, 3 LPRA sec. 143(a)(e) nt.

Como sabemos, el Secretario de Educación, funcionario de rango constitucional, es la figura principal en el Departamento de Educación. Es el oficial llamado por la ley a encauzar "la gestión educativa del Sistema a través de normas reglamentarias, de directrices de política pública y de actividades de planificación, auditoría, fiscalización y evaluación de los procesos académicos y administrativos de las

escuelas." 3 LPRA sec. 145e. Entre las responsabilidades generales que le confiere la ley al Secretario con respecto a las escuelas se encuentran, entre otras: "[o]rganizar, dirigir, supervisar y evaluar las actividades académicas y administrativas del Departamento", 3 LPRA sec. 145s; la planificación fiscal para todo el sistema de educación pública y la asignación presupuestaria a cada escuela, así como también la evaluación, auditoría o fiscalización de cualquier otra actividad que las escuelas desarrollen dentro del ámbito de la autonomía que la ley les confiere. 3 LPRA sec. 145f. Además, tiene la obligación de formular normas de aplicación general a todas las escuelas, que propicien la coherencia en la gestión educativa del sistema de enseñanza pública. 3 LPRA sec. 145o.

El Secretario, como director académico del sistema, deberá establecer un currículo básico para el sistema de educación "con márgenes de flexibilidad suficiente para que las escuelas lo adapten a sus necesidades…." 3 LPRA sec. 145u(c). Aprobará los libros, textos, equipos y materiales requeridos para la docencia. 3 LPRA sec. 145t(i). Establecerá un plan de desarrollo integral de cinco (5) años donde se establecen los objetivos a corto y mediano plazo. Véanse, 3 LPRA secs. 145u, incisos (a),(b),(c),(e),(m),(n),(p), (w) y (x). Entre otras cosas, este plan debe proyectar el ofrecimiento de cursos de educación física al estudiantado así como ofrecer cursos de moral y ética gubernamental; desarrollar programas de orientación referente a la

criminalidad, las leyes penales y la seguridad en el tránsito; crear proyectos de estudios avanzados y velar por el cumplimiento de los programas de estudiantes con impedimentos. 3 LPRA sec. 145t(e)-(bb). Para ello, necesariamente, se le ha provisto al Secretario con amplio margen de discreción.

En su función de director administrativo del sistema de educación pública, la ley orgánica provee que el Secretario debe adoptar la fórmula correspondiente para determinar el presupuesto de las escuelas que componen el sistema de educación pública, así como también el presupuesto del Departamento. 3 LPRA sec. 145u(n). En cuanto a la primera gestión, deberá tomar en cuenta, discrecionalmente, los siguientes factores, entre otros: el nivel de ofrecimientos de la institución, su matrícula, la naturaleza de sus programas, la antigüedad de la facultad, el estado de las facilidades físicas. 3 LPRA sec. 145u(a). Además, el Secretario es el responsable de administrar el sistema de personal del Departamento, tanto el docente como el no docente. 3 LPRA sec. 145u(j).

Aquí hay que destacar la importancia de la confección de un presupuesto en la gestión de una agencia o un gobierno. Así, hemos señalado en el pasado que el presupuesto del Estado es "mucho más que una contabilización de ingresos y gastos desligado de todo esfuerzo para encauzar la obra de gobierno y lograr alcanzar determinados fines sociales. Es, verdaderamente, un plan de acción gubernamental expresado en términos financieros." *Presidente de la*

*Cámara v. Gobernador*, 167 DPR 149, 176 (2006) (Rodríguez Rodríguez, J., op. disidente). Don Pedro Muñoz Amato sostenía que el presupuesto "debe ser el programa que dirija toda la actividad gubernamental en su función de orientar los procesos sociales y servir los intereses del pueblo." P. Muñoz Amato, *Introducción a la administración pública, teoría general, planificación-presupuestos*, 4ta. Ed., México, Fondo de Cultura Económica, 1966, pág. 141. Necesariamente, su confección conlleva el ejercicio de discreción, habida cuenta de que los recursos disponibles no son ilimitados por lo que hay que seleccionar qué programas adelantar, en qué momento y de qué manera, de suerte que se pueda adelantar el plan de obra trazado. M. Popovich, editor, *Creating High-Performance Government Organizations*, Alliance for Redesigning Government, Jossey-Bass Publishers, San Francisco, 1998, pág. 129 ("With limited funds and virtually insatiable demand for services, public resources must be allocated to meet the public's priorities.")

Para resumir, bajo la Ley núm. 149 es el Secretario de Educación el llamado a establecer la pauta general y el ordenamiento normativo que habrá de regir al sistema de educación pública. Dirige y supervisa todas las actividades académicas y administrativas del Departamento de Educación, para lo cual, necesariamente, debe contar con la discreción necesaria para adelantar sus objetivos. En ese sentido, no han perdido su vigencia nuestras expresiones en *Hernandez Estrella v. JASAP*, 147 DPR 840, 845 (1999), cuando, al interpretar

la Ley núm. 68, señalamos que el Departamento de Educación constituye un sistema integrado, dirigido por el Secretario, quien ejerce las funciones ejecutivas, administrativas, operacionales, de supervisión y planificación de su ley orgánica, para lo cual necesita la flexibilidad necesaria para alcanzar las metas trazadas. El Secretario de Educación debe tener discreción para, de forma razonable, orientar los proyectos y metas que su ley orgánica le impone, mediante la confección de un presupuesto que refleje su política pública. Así, el presupuesto de la agencia sirve para dirigir esa discreción de suerte que se alcancen los objetivos delineados. Como ya dijimos, la Ley núm. 146 no opera en un vacío estatutario al margen de las restantes "obligaciones" que la ley orgánica del Departamento de Educación impone sobre su Secretario, y es en ese contexto que hay que interpretarla.

Con ese marco doctrinal de trasfondo, procede evaluar, con rigor jurídico, la controversia en este caso.

IV

Conforme indicamos inicialmente, la Asociación de Maestros arguye que el Secretario de Educación no tiene discreción para implantar el mandato de la Ley núm. 146. Insiste que es un deber ministerial de éste nombrar los maestros de educación física necesarios para que todos los estudiantes matriculados puedan recibir el curso de educación física. Nos indica que la educación física "es fundamental para el desarrollo total del joven puertorriqueño [y que] determinar que el nombramiento de

los maestros de educación física el cual tiene fuerza de ley, es discrecional, penaliza al estudiantado puertorriqueño del beneficio de la política pública gubernamental de acompañar con igual importancia lo docente con la buena condición física."

Por otro lado, el Estado Libre Asociado reconoce en su alegato la importancia de los cursos de educación física para el pleno desarrollo del estudiantado. Argumenta no obstante, que el deber impuesto tiene que analizarse de forma integral tomando en consideración todas las prerrogativas y atribuciones que la ley orgánica del Departamento de Educación le confieren al Secretario. Indica, que el Secretario tiene discreción para reclutar el personal adicional tomando en consideración los fondos con que cuente el Departamento, por lo que el deber impuesto por la Ley núm. 146 es discrecional y no ministerial.

El Procurador General nos informa que existen, al presente, 1,523 escuelas de las cuales, 1,090 pertenecen al nivel elemental y 433 a los niveles intermedio y superior. Indica además que existen 2,764 plazas contratadas con personal docente para ofrecer el curso de educación física, y que en todas las escuelas públicas se imparte el curso de educación física. Sostiene, que a partir del 2001 se llevó a cabo un proceso escalonado de nombramientos para dar cumplimiento a la Ley núm. 146 que ha conllevado, entre 2001 a 2003, la creación de 726 plazas adicionales de maestros de educación pública. Informa, que acceder a lo solicitado por la Asociación tendrá un impacto

sustancial sobre el presupuesto de la agencia, y exige del Departamento la creación de cientos de plazas sin que exista la capacidad organizativa, ni la infraestructura necesaria, para sostenerlo.

Finalmente, llama la atención a la difícil situación fiscal por la que atraviesa el Departamento de Educación y la dificultad práctica que supondría la contratación de nuevo personal. Nos señala también, que el historial legislativo de la Ley núm. 146 reflejaba que con su aprobación, se vislumbraba la inserción de 1,600 maestros de educación física a un costo estimado, únicamente en nómina, de 32 millones de dólares, exclusivo de gastos en concepto de materiales, inversiones a la infraestructura de los planteles, entre otros. Véase, Comunicación de la Asociación de Educación Física y Recreación de Puerto Rico, al Hon. Tomás Bonilla Feliciano, Presidente de la Comisión de Educación y Cultura de la Cámara de Representantes, 7 de marzo de 2000, sobre el P. de la C. 2970.

El Estado concluye afirmando que "una interpretación razonable de las obligaciones del Secretario en términos del currículo y el gobierno administrativo del Sistema, le impone una amplia facultad para flexibilizar los diversos ofrecimientos del Departamento a los fines de proporcionar el programa más adecuado a la luz de los fondos disponibles para la agencia cumplir con sus múltiple obligaciones." Por lo que no tan sólo la obligación que recoge la Ley núm. 146 es de carácter discrecional, "sino que intereses

públicos de envergadura exigen la denegación del remedio extraordinario solicitado…."

V

A

La inserción de programas de educación física al currículo escolar contribuye al desarrollo integral de la niñez. No tan sólo promueven en el niño su desarrollo físico sino también, apoya la manifestación del niño como sujeto social, favoreciendo la comunicación y relación con sus pares a través del trabajo en equipo y la conformación de grupos. Los cursos de educación física facilitan que los niños aprendan a negociar, acordar, respetar y modificar las reglas que posibilitan la igualdad de oportunidades para todos. Todo lo cual redunda en un desarrollo más pleno del individuo además de propiciar una escuela verdaderamente democrática, de convivencia y de participación, de cooperación y de solidaridad, de integración social y pertenencia grupal. Véase A. Nóbile, G. Fedi, *La educación física para la escuela primaria*, Editorial Edilar, México, 2004. La Ley núm. 146 persigue alcanzar estos loables ideales.

Dicho esto, no obstante, hay que reconocer que la Ley núm. 146 no opera en el vacío sino que establece una de las múltiples responsabilidades que recaen sobre la figura del Secretario de Educación, como ya discutimos. Éste tiene la responsabilidad de adelantar los objetivos de esta ley, al igual que los restantes establecidos en la ley orgánica del Departamento. En atención a ello, es razonable concluir que le corresponde al Secretario

establecer las prioridades del Departamento a la hora de darle cumplimiento a la multiplicidad de deberes que le impone su ley orgánica de suerte que pueda alcanzar los objetivos y metas trazadas. No podemos, razonablemente, interpretar la Ley núm. 146 como una camisa de fuerza, rígida e inflexible, que priva al Secretario de toda discreción para establecer las metas y objetivos del Departamento en función de los fondos con los que efectivamente cuenta. Esto no nos parece una interpretación razonable de la ley orgánica del Departamento de Educación.

Nuevamente, el Secretario tiene la responsabilidad de establecer y administrar el presupuesto del Departamento, así como establecer los términos y condiciones para el reclutamiento de personal  Ello conlleva, necesariamente, un análisis mesurado, juicioso y razonable de cómo confeccionar y administrar su presupuesto. En otras palabras, contempla el ejercicio de la discreción administrativa de acuerdo con la realidad presupuestaria del Departamento. En esta función el Secretario tiene la obligación de administrar sabiamente los recursos disponibles. Tiene razón el Tribunal de Apelaciones cuando asevera: "El Secretario está limitado por la sabiduría de su propio juicio y por su noción de cuáles son las prioridades presupuestarias. El deber de nombrar todas las plazas de educación física conforme lo establece al ley es un deber discrecional y su omisión no es remediable mediante el recurso de *mandamus*." Adviértase además, que el Departamento ha cumplido con el mínimo que dispone la ley al nombrar al

menos un maestro de educación física por escuela. En vista de ello, concluiría que el deber que le impone la Ley núm. 146 al Secretario de Educación es uno de naturaleza discrecional por lo que no procedía expedir el *mandamus* solicitado.

Finalmente, aún si se tratara de un deber ministerial tal y como resuelve la mayoría, considero que su expedición ofende el interés público que es, como ya vimos, el criterio de mayor peso. Este Tribunal no vive ajeno a lo que ocurre a nuestro alrededor. Tomamos conocimiento judicial de que miles de empleados públicos han sido cesanteados por el gobierno y un número significativo de ellos en el Departamento de Educación. Se alega que ello obedece a consideraciones de índole fiscal y a dificultades presupuestarias que, al momento, no se han podido conjugar. La mayoría, abstraída de esta realidad, obliga al Estado a incurrir en lo que será una erogación millonaria de fondos públicos en el Departamento de Educación. Habrá que preguntarse entonces, si para cumplir con la obligación que hoy se le ha impuesto, el Secretario de Educación tendrá que despedir a nuevos empleados públicos. Considero pues, que la mayoría no ha sopesado adecuadamente el criterio de mayor importancia y peso para conceder un *mandamus,* que es, como ya discutimos, el impacto de su concesión sobre el interés público.

VI

Unas consideraciones finales en cuanto al remedio que dicta el Tribunal en este caso.

La mayoría, advertida de las repercusiones de su dictamen, ha procedido a diseñar un remedio *sui generis* que transmuta un remedio en ley ("remedy at law") en uno en equidad ("remedy in equity"). En otras palabras, se ha solicitado que se dicte un *mandamus* y este Tribunal ha procedido a dictar un *injunction*. Porque no puedo estar conforme con esta metamorfosis del remedio, consigno mi desacuerdo. Me explico.

La mayoría intenta paliar el efecto de su dictamen posponiendo el cumplimiento con el "deber ministerial del Secretario". Para ello, "el Secretario deberá diseñar un plan [que suponemos es de nombramientos, aunque no se diga expresamente] que tenga como objetivo cumplir a cabalidad con el mandato de ley, conforme la capacidad del Departamento. Una vez iniciado deberá completarse en un plazo de dos (2) años. Lo primero que llama la atención es el término seleccionado por el Tribunal. ¿Qué criterio se utilizó para llegar al término propuesto? ¿Qué llevó al Tribunal a considerar que éste era un periodo de tiempo razonable para cumplir con lo que se determinó es una obligación ministerial? ¿Qué factores, de récord, le permiten al Tribunal dictaminar el plazo?

Por otro lado, al devolver el caso al foro de instancia para que el Secretario proceda --bajo la supervisión del Tribunal de Primera Instancia-- a preparar su plan de cumplimiento "conforme a la capacidad del Departamento", este Tribunal parece reconocerle al Secretario de Educación cierta discreción sobre cómo cumplir con el mandato de ley; mandato, que

previamente ha concluido es uno de carácter ministerial. Ello plantea, a nuestro juicio, una contradicción que requiere explicación.

Antes bien, independientemente de lo indicado, no hay duda de que este remedio que dicta la mayoría, aun cuando no lo llame así, no es otra cosa que un *injunction*. No es ésta la ocasión para disertar sobre la naturaleza del remedio de *mandamus* frente a otro remedio extraordinario importado del derecho común anglosajón, como lo es el *injunction*. Si bien pudiéramos estar de acuerdo o en desacuerdo sobre cuáles deban ser los requisitos de uno frente a otro, lo cierto es que la opinión no explica por qué si lo que se ha solicitado es un *mandamus,* es necesario emitir un *injunction*. Consideramos que en correcta técnica adjudicativa se debe atender este asunto explicando el porqué de este *mandamus sui generis* creado por *fíat* judicial.

Ya indicamos que el remedio que ha dictado esta Curia es un *injunction*. Mas no cualquier *injunction*, sino el que el profesor Owen Fiss ha denominado como un *injunction* estructural. Con este tipo de remedio los tribunales buscan aplicar los mandatos constitucionales a los problemas creados o generados por un ente gubernamental. El professor Fiss lo define como: "the formal medium through which the judiciary seeks to reorganize ongoing bureaucratic organizations so as to bring them into conformity with the Constitution." O. Fiss, The Allure of Individualism, 78 *Iowa L. Rev.* 965 (1993).

Una de las características principales de este remedio es el rol dinámico que asume el juez en este tipo de litigación, confeccionando un remedio amplio, abarcador y comprensivo que requiere estrecha supervisión del tribunal en su implementación y cumplimiento. El profesor Abram Chayes lo describe de la siguiente manera:

> "'[P]ublic law litigation' … was designed to emphasize that in such cases the federal courts … are asked to deal with grievances over the administration of some public or quasi public programs and to vindicate the public policies embodied in the governing statutes or constitutional provisions. **As a result, courts are inevitably cast in an affirmative, political --activist … role."**
> (Énfasis nuestro.)

A. Chayes, The Supreme Court, 1981 Term, Foreword: Public Law Litigation and the Burger Court, 96 *Harv. L. Rev.* 4 (1982). El profesor Dobbs se expresa en igual sentido: "restructuring injunctions are typically complex and invasive. They are likely to involve the judge in tasks traditionally considered to be non-judicial, that is, less about rights and duties and more about management." D. Dobbs, *Law of Remedies, Damages-Equity-Restitution*, 2nd ed., West Publishing Co., St. Paul, 1993, sec. 2.9(1), pág. 164.

Consideramos que en este caso, como poco, se requiere una explicación de por qué la determinación que toma no inmiscuye impropiamente a la Rama Judicial en funciones ínsitas a la Rama Ejecutiva, como lo es diseñar y administrar el presupuesto de una agencia. En otras palabras, hasta qué punto el remedio dictado por el Tribunal viola la separación de poderes.

Por los fundamentos antes expuestos, disiento del criterio mayoritario.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Maestros de
Puerto Rico, por sí y en
representación de sus socios
maestros de Educación Física                    *Certiorari*
    Demandantes-Peticionarios

              v.                              CC-2005-777

Hon. César Rey Hernández, PH.D.
en su carácter oficial como
Secretario del Departamento de
Educación;     Estado     Libre
Asociado de Puerto Rico
    Demandados-Recurridos


Opinión disidente emitida por la Jueza Asociada
señora PABÓN CHARNECO.


En San Juan, Puerto Rico, a 16 de febrero de 2009.

Disiento respetuosamente de la Opinión mayoritaria por entender que si bien el Secretario de Educación tiene el deber ministerial de garantizar un maestro de educación física por cada escuela del sistema de educación pública y nombrar maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción, la expedición del recurso de *mandamus* solicitado no procede en consideración de los intereses públicos implicados.

I.

El auto de *mandamus* es uno altamente privilegiado que se expide por los tribunales a

a nombre del Gobierno de Puerto Rico requiriéndole a una persona o personas naturales, a una corporación o a un tribunal judicial de inferior jerarquía el cumplimiento de algún acto que esté dentro de sus atribuciones o deberes. 32 L.P.R.A. sec. 3421. Por tanto, su concesión descansa en la discreción del Tribunal.

Éste procede solamente "contra el funcionario a quien la ley le impone el deber de actuar y quien está en posición de acatarlo", *García v. Vivas,* 67 D.P.R. 835, 838 (1947), a solicitud de la parte beneficiada o interesada cuando el deber del que se exige cumplimiento es un deber ministerial y "no hay otro mecanismo en ley para conseguir dicho remedio". *Acevedo Vilá v. Aponte Hernández*, 168 D.P.R. 443 (2006). En otras palabras, procede "cuando ese deber no admite discreción en su ejercicio". D. Rivé Rivera, *Recursos Extraordinarios,* 2da. ed., San Juan, Programa de Educación Jurídica Continua, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1996, pág. 107.

No obstante, hemos señalado que los tribunales tienen que medir el impacto que éste pueda tener en los intereses públicos, evitar una posible intromisión indebida en los procedimientos del Poder Ejecutivo, o si su expedición da lugar a confusión o a perjuicios de los derechos de terceros. *Noriega v. Hernández Colón*, 135 D.P.R. 406, 448 (1994). A esos efectos, hemos apuntado que "[e]l factor de

mayor importancia y peso es el del posible impacto al interés público". *Id.*, pág. 448.

Dentro del marco jurídico antes esbozado, procedemos a examinar si el Secretario de Educación tiene el deber ministerial de garantizar un maestro de educación física por cada escuela del sistema de educación pública y, particularmente, si éste tiene la obligación de nombrar maestros adicionales para ofrecer dicha materia por cada doscientos cincuenta (250) estudiantes o fracción.

II

La Constitución de Puerto Rico establece que:

> **Toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales.** Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, **hasta donde las facilidades del Estado lo permitan**, se hará obligatoria para la escuela primaria. La asistencia obligatoria a las escuelas públicas primarias, **hasta donde las facilidades del Estado lo permitan**, según se dispone en la presente, no se interpretará como aplicable a aquellos que reciban instrucción primaria en escuelas establecidas bajo auspicios no gubernamentales. No se utilizará propiedad ni fondos públicos para el sostenimiento de escuelas o instituciones educativas que no sean las del Estado. Nada de lo contenido en esta disposición impedirá que el Estado pueda prestar a cualquier niño servicios no educativos establecidos por ley para protección o bienestar de la niñez. (Énfasis suplido). Art. II, Sec. 5, Const. P.R, L.P.R.A., Tomo 1, ed. 2008, pág. 292.

El derecho a la educación está sujeto a la disponibilidad de recursos necesarios para su realización. *Asoc. Academias y Col. Cristianos v. E.L.A.*, 135 D.P.R. 150, 169 (1994).

Por otro lado, y en consecución al mandato constitucional, el Artículo 1.02 de la Ley Núm. 149 de 15 de julio de 1999, según enmendada, conocida como Ley Orgánica del Departamento de Educación de Puerto Rico, establece como parte de sus propósitos que el Sistema de Educación Pública de Puerto Rico debe ayudar a los alumnos, *inter alia*, a "adquirir conciencia de la necesidad de desarrollo de una buena condición física, haciendo énfasis en la importancia de ser saludables, tanto en su dimensión física, como en la mental y espiritual". Asimismo, para la consecución de este propósito requiere que se incluya "como requisito del currículo los cursos de educación física", 3 L.P.R.A. sec. 145t(c). Cabe apuntar que es para el único curso que establece, en particular, que:

> Las escuelas **proveerán** a todos sus estudiantes con un mínimo de **tres (3) horas semanales de educación física.** Se **garantizará un maestro de educación física a cada escuela.** Para el caso de escuelas con más de doscientos cincuenta (250) estudiantes **se nombrarán maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción.** (Énfasis nuestro). Artículo 3.04 de la Ley Núm. 149, *supra*, 3 L.P.R.A. sec. 144c-1.

Además, el referido estatuto también establece las responsabilidades, funciones, facultades y obligaciones del

Secretario de Educación, tanto a nivel académico como administrativo. Éstas incluyen, *inter alia*, la implantación de la política pública "con el fin de realizar los propósitos que la Constitución de Puerto Rico y las secs. 143a a 146f de este título pautan para el Sistema de Educación Pública". 3 L.P.R.A. sec. 145s(a). Como parte de sus obligaciones también establecerá un currículo básico para el Sistema de Educación Pública que incluirá como requisito los cursos de educación física y la formulación de un plan asignando los fondos necesarios para el establecimiento de los cursos de educación física en todas las escuelas. 3 L.P.R.A. sec. 145t(c)y(w). Asimismo, deberá adoptar la fórmula para determinar el presupuesto de las escuelas, y establecerá las normas relacionadas con la administración del personal de las escuelas. 3 L.P.R.A. sec. 145u(a)y(c).

III

De una lectura de la Ley Núm. 149, *supra*, se colige de manera meridiana el especial interés que tiene la Asamblea Legislativa respecto al ofrecimiento de los cursos de educación física en el Sistema de Educación Pública. Tal interés se evidencia en la especificidad señalada en los propósitos de la Ley, la requerida inclusión de éste en el currículo escolar como curso primario, la disposición sobre la cantidad de maestros que deben estar disponibles para ofrecer tales cursos, así como la asignación de fondos

exigida para lograr estos propósitos. Por tanto, concluimos que los deberes del Secretario de Educación respecto a los cursos de educación física no admiten discreción en su ejercicio. Estamos contestes con la determinación de la Opinión Mayoritaria respecto a que el Secretario de Educación tiene el deber ministerial de ofrecer dicho curso según especificado en la ley. Esto surge claramente de la disposición estatutaria concernida. Abarca, además, los recursos humanos, materiales y de infraestructura para ofrecerlo.

No obstante, es nuestra responsabilidad medir el impacto que pueda tener en los intereses públicos el requerirle al Secretario de Educación nombrar todos aquellos maestros adicionales por cada doscientos cincuenta (250) estudiantes o fracción faltantes en cada escuela y, a su vez, obtener todos los demás recursos necesarios para ofrecer los cursos. Al respecto, el Departamento de Educación señala, en su comparecencia ante nos, que ha cumplido con los requisitos mínimos de la ley al tener dos mil setecientos sesenta y cuatro (2,764) profesionales en esta materia para un total de mil quinientas veinte y tres (1,523) escuelas en el Sistema de Educación Pública. Sin embargo, el Departamento de Educación arguye que la adición de aproximadamente mil (1,000) maestros más conllevaría un

impacto demasiado oneroso para la agencia en estos momentos.[91] No podemos hacer abstracción de esta situación.

La importancia de que nuestros estudiantes se beneficien de un curso cabal de educación física y el interés tan patente de la Asamblea Legislativa de que esto se logre plenamente son indudables. Aún así, ante la realidad presupuestaria actual del Estado y particularmente de dicha agencia,[92] la creación de plazas adicionales y otros recursos que esto conlleva, comporta un impacto sustancial en el presupuesto de la agencia que sobrepasa las presentes facilidades del Estado y que puede afectar el ofrecimiento de otros servicios a la comunidad estudiantil puertorriqueña que son igualmente preeminentes. El impacto que pueda tener en los intereses públicos emitir el recurso de *mandamus* en el caso de autos impide que podamos avalar su expedición.

IV

Por los argumentos antes expresados, disiento respetuosamente de la Opinión Mayoritaria.

Mildred G. Pabón Charneco
Jueza Asociada

---

[91] Cifras ofrecidas en el Alegato de la parte recurrida el 2 de agosto de 2006.

[92] El Departamento de Educación ha operado con un déficit presupuestario por los pasados años que ha afectado, *inter alia*, el pago de la nómina. Véase, Ley Núm. 98 de 16 de mayo de 2006. Véase, además en relación con la situación presupuestaria del Estado, Exposición de Motivos de la Ley Núm. 3 de 14 de enero de 2009.